Steven K. Eisenberg, Esquire (Pro Hac Vice)
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pennsylvania 18976
Telephone: (215) 572-8111
Facsimile: (215) 572-5539
E-Mail: seisenberg@sterneisenberg.com
*Special Counsel for Lenard E. Schwartzer, Trustee*

Stern & Eisenberg ATTORNEYS AT LAW

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>FRESH MIX LLC,<br><br>Debtor(s). | Case No. BK-S-20-12051-GS<br><br>Chapter 7<br><br>**MOTION TO COMPEL BRUCE A. LESLIE, CHTD. AND BRUCE A. LESLIE, ESQUIRE TO TURN OVER DEBTOR'S LEGAL RECORDS, FOR SANCTIONS AND FOR OTHER RELIEF (Pursuant to Nevada Revised Statute 7.055)**<br><br>Hearing Date: June 2, 2022<br>Hearing Time: 1:30 p.m. |

Lenard E. Schwartzer, the Chapter 7 Trustee (the "Trustee") for the above-referenced bankruptcy case, by and through his special counsel, Steven K. Eisenberg, Esquire of Stern & Eisenberg, PC, requests entry of an Order compelling the law firm of Bruce A. Leslie, Chtd. And Bruce A. Leslie, Esquire (jointly referred to as "Leslie" and/or "Law Firm") to turn over Debtor, Fresh Mix, LLC's legal records to the Trustee pursuant to Nevada Revised Statutes §7.055 together with such other relief as this Court deems appropriate. The Trustee has requested that turn over the records, but due to the interference of Fresh Mix's former co-party, Get Fresh Sales, Inc. ("GFSI") Leslie (and other Counsel) has failed to deliver the Debtor's legal records to

Stern&Eisenberg ATTORNEYS AT LAW

the Trustee as requested and required under the law.

This Motion is based on the *Declaration of Lenard E. Schwartzer* (the "Schwartzer Declaration") filed concurrently with this Motion together with the content, points and authorities contained in this motion presented to the Court, together with any other items that may be presented at the time of the hearing, including anything presented in opposition to this Motion.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicate for this Motion is Nevada Revised Statute §7.055.

## II. CASE BACKGROUND

### A. The Bankruptcy Case and the Trustee's Claims

#### *i. The Involuntary Proceeding*

1. On April 23, 2020, GET FRESH SALES, INC. ("GFSI") invoked the jurisdiction of this Court and filed an involuntary petition under Chapter 7 of the Bankruptcy Code against the Debtor, FRESH MIX, LLC (the "Debtor" and/or "Estate" and/or "Fresh Mix"). GFSI was the majority owner and manager of the Debtor (60%) when GFSI filed the involuntary petition against the Debtor.

2. This Court entered an order for relief on August 11, 2020 [ECF No. 59], and

Stern&Eisenberg ATTORNEYS AT LAW

Lenard E. Schwartzer is the duly appointed Chapter 7 Trustee for this case [ECF No. 61].

3. Based on the information turned over to the Trustee to date, the Trustee has determined that the assets of the bankruptcy estate include potential claims against GFSI, GFSI's managers and members, and GFSI's affiliated companies and individuals (collectively referred to as the "GFSI Parties") (including but not limited to law firms that represented the Debtor, including the firm that is a Respondent in the instant matter) that will need to be investigated, developed, and pursued (the "Estate Claims"). *See* Schwartzer Declaration.

4. In order to fully understand the rights and interests comprising the Estate Claims, the Trustee needs to have all of the records that belong to the Estate, including those records of in the hands of Fresh Mix's prior legal counsel.

***ii. The Engagement Agreement with Leslie***

5. On April 12, 2018, Scott Goldberg hired Leslie. A copy of the Engagement Agreement is attached to the Schwartzer Declaration as **Exhibit "1"**.

6. The Engagement Letter sets forth:

a. The "Client" as "Scott Goldberg". There is no designation to indicate whether it is in a personal capacity or in his capacity as officer, manager, CFO of any company, including, but not limited to Fresh Mix, GFSI, Get Fresh Kitchen, LLC, Fresh Cuts, LLC or any other entity in which Scott Goldberg holds ownership or title.

b. The Scope of Engagement is "We will assist and represent you in

Stern&Eisenberg ATTORNEYS AT LAW

connection with the consultation on a ***Fresh Mix, LLC/Get Fresh Sales business matter*** and ***possible sale of the business***." (Emphasis added).

***iii. Scott Goldberg's Roles with Both the Debtor, Fresh Mix and the Involuntary Petitioner, GFSI***

7. Scott Goldberg is the CFO and a Manager of Fresh Mix. See April 8, 2019 letter from Scott Goldberg on Fresh Mix letterhead attached as **Exhibit "2"**.

8. Scott Goldberg, as "member"[1] and CFO, of Fresh Mix, signed the schedules and statement of financial affairs in this case on August 20, 2020. [ECF No. 155].

9. The GFS Managers[2] designated Scott Goldberg as the representative for Fresh Mix to appear at each of the 341a hearings, September 16, October 13 and November 13, 2020, as the designated representation of Fresh Mix. The September 16, 2020 341a Transcript is attached as **Exhibit "3"**, and is hereby incorporated by reference.[3]

10. Scott Goldberg is the CFO, Treasurer and 45% owner of GFSI. See Exhibit 3, page 36:13-14 (CFO) and page 38:8-11 (45%). According to Nevada corporate records, Goldberg is the Treasurer of GFSI; which record is attached as ***Exhibit "4"***.

11. On April 22, 2020, Scott Goldberg signed the involuntary petition against Fresh Mix as representative for petitioning creditor, GFSI. [ECF No. 1]. At the direction of his

---

[1] Scott Goldberg is not a member of Fresh Mix; pursuant to the terms of the Operating Agreement, he, Dominic Caldara and John Wise are Managers. Together, they are the "GFS Managers" of Fresh Mix.

[2] The GFS Managers are defined in the Operating Agreement at Section 1.33 as Dominic Caldara, Scott Goldberg and John Wise.

[3] See pages 4:1-5:17. See pages 5:18-7:15 as to Mr. Goldberg confirms the accuracy of the schedules.

partners, Dominic Caldara and John Wise, Goldberg was the representative for both debtor and creditor; he wore both hats simultaneously without the ability to distinguish which hat was on at which time.

12. Goldberg has confirmed that the representation provided by joint counsel was so intermingled that joint counsel always met with the overlapping management of both GFSI and Fresh Mix on all matters; specifically, in his declaration before the State Court on March 14, 2022, Goldberg confirmed that Leslie (, Pisanelli Bice and CDQ) always met with the combined management, the ownership of GFSI who are also the majority managers of Fresh Mix (Caldara, Goldberg and Wise are the 100% owners of GFSI and the GFS Managers of Fresh Mix). See ECF 479, pages 39-40, specifically paragraph 13.

***iv. Legal Counsel – Bruce A. Leslie, Chtd. & Bruce A. Leslie, Esq.***

13. As pointed out by Goldberg, under oath, at the November 13, 2020 3rd 341a Meeting:

Jason Imes: Okay. Did Fresh Mix pay or was Fresh Mix charged for any legal work provided by Mr. Leslie?

Mr. Goldberg: Fresh Mix later on reimbursed Get Fresh for costs from all the legal, but at a 50% reimbursement. So once the litigation started and Fresh Mix and Get Fresh were named, our legal counsels said it would be cost prohibitive to try to go through every line item on every bill and try to allocate every single charge from multiple law firms between the companies. And they recommended to me to just split at 50/50. And that's exactly what I did.

Jason Imes: So Fresh Mix was charged or paid for legal work by Mr. Leslie?

Mr. Goldberg: Yes

Scott Goldberg testimony on November 13, 2020, pages 13:23-14:15. The

transcript is attached hereto as ***Exhibit "5"***.

14. Goldberg confirmed that it was impossible to determine at what times Leslie was representing the interests of Fresh Mix versus those of GFSI, so the bills were just split evenly.

15. On April 12, 2018, Leslie began his work on the "Fresh Mix, LLC/Get Fresh Sales business matter".

16. On May 29, 2018, Leslie wrote to counsel for the L-E Managers[4] regarding mixed issues from Leslie's legal opinion on the status of employment agreements with Fresh Mix to a possible restructuring of Fresh Mix with GFSI. The email is attached as ***Exhibit "6"***.

17. Leslie assisted with Fresh Mix's other concurrent counsel, Cohen Dowd Quigley, PC ("CDQ") and Pisanelli Bice, PLLC ("PB"), in drafting the notice of termination sent on November 26, 2018, whereby Fresh Mix terminated Lagudi and Ponder from their salaried employee positions with Fresh Mix. A copy of the notice of termination sent to Paul Lagudi is attached as ***Exhibit "7"***. Leslie, along with the other counsel jointly representing Fresh Mix were copied on the letter.

18. On December 3, 2018, the L-E Managers filed the state court action in the District Court, Clark County, Nevada at docket A-18-785391-B.

19. At the preliminary injunction hearing held on December 11, 2018, Leslie appeared on behalf of both Fresh Mix and GFSI (along with counsel from PB). A copy of the hearing transcript is attached as ***Exhibit "8"***. See page 2:19-22.

---

[4] The L-E Managers are defined in the Operating Agreement, section 1.38 as Paul Lagudi and William Todd Ponder.



Stern&Eisenberg ATTORNEYS AT LAW

20. The state court ruled that many of the issues amongst the parties were appropriate for arbitration pursuant to section 14.7 of the operating agreement.

21. On February 13, 2019, CDQ filed a demand for arbitration on behalf of Fresh Mix and GFSI against the L-E Managers. Although Leslie was not identified on that filing, his name was associated with counsel for Fresh Mix and GFSI.

22. Leslie worked directly with PB and CDQ through the duration of the litigation involving Fresh Mix and GFSI as demonstrated throughout the CDQ billing records[5], for example:

> January 23, 2019 entry for Daniel P. Quigley, Esquire, Partner at CDQ:
>
> ***Exchange emails with D. Spinelli[6] and B. Leslie***; exchange emails with R. Cohen regarding status and strategy.
>
> February 4, 2019 entry for Betsy Lamm, Esquire, Partner at CDQ:
>
> ***Lengthy telephone call with B. Leslie regarding the draft demand for arbitration***; email correspondence to CDQ team regarding the same; review the operating agreement to identify additional repurchase events, if any, that would allow repurchase of Mr. Lagudi and Mr. Ponder's interest at fair market value; ***significant revisions to the draft demand for arbitration to address Mr. Leslie and Mr. Goldberg's comments***; additional review and revisions to the same.
>
> August 5, 2019 entry for Betsy Lamm, Esquire, Partner at CDQ:
>
> Continue review of and revisions to the Amended Demand for Arbitration; incorporate R. Cohen's revisions; ***incorporate feedback from Mr. Leslie***, Mr. Goldberg, and Mr. Caldara; Final review of and revisions to the Amended Demand for Arbitration; Create a redline and finalize exhibits;…
>
> March 30, 2020 entry for Ron Cohen, Esquire, Founding Partner of CDQ:

---

[5] References to Mr. Leslie appear on 94 pages of the CDQ billing records.
[6] D. Spinelli is Debra Spinelli, Managing Partner at Pisanelli Bice, PLLC.



Stern&Eisenberg ATTORNEYS AT LAW

Review draft memorandum in support of opposition to proposed vacating of March 2, order; focus on jurisdictional argument by Lagudi and Ponder; ***review exchange of emails between Pisanelli Bice and Bruce Leslie*** regarding document demand letter.

The snippets from the billing records of CDQ are attached as **Exhibit "9"**; to the extent the records have been designated as confidential, they will be filed under seal as Exhibit "9R" and "9C", which are the redacted and un-redacted billing records, respectively.

23. The Pisanelli Bice billing records[7] equally demonstrate Leslie's involvement in the representation of Fresh Mix (and GFSI) throughout the litigation:

December 3, 2018 entry for James Pisanelli, Esquire, Founding Partner of PB:

Call with team regarding case status and strategy; ***email from B. Leslie regarding same***.

June 6, 2019 entry for Debra Spinelli, Esquire, Managing Partner of PB;

***Review and respond to email from B. Lamm and B. Leslie.***

January 25, 2020 entry for Debra Spinelli, Esquire, Managing Partner of PB:

***Review and respond to email from B. Leslie regarding filings.***

The snippets from the billing records of PB are attached as **Exhibit "10"**; to the extent the records have been designated as confidential, they will be filed under seal as Exhibit "10R" and "10C", which are the redacted and un-redacted billing records, respectively.

24. Concurrent counsel believed that Leslie represented Fresh Mix:

a. On April 24, 2019, Mr. Quigley wrote to counsel [ECF Doc. 211-3] identifying Leslie as counsel for Fresh Mix, Get Fresh and Mssrs. Caldera, Goldberg and Wise. A copy of the letter is attached as **Exhibit "11"**.

b. On April 25, 2019, Ms. Lamm wrote to counsel [ECF Doc. 211-2] stating

---

[7] References to Mr. Leslie appear on 34 pages of the PB billing records

Stern&Eisenberg ATTORNEYS AT LAW

that "On March 12, 2019, Fresh Mix counsel, Bruce Leslie,". A copy of the letter is attached as **Exhibit "12"**.

25. While there may be an argument made that Leslie's entry on December 11, 2018 was somehow overstated, on May 19, 2019, Leslie wrote to all attorneys involved in the matter making his position abundantly clear. A copy of his email is attached as **Exhibit "13"**. Leslie states (emphasis added): "***First, I want to be clear, I am outside counsel for Fresh Mix*** and Get Fresh."

26. Regardless of Leslie's actual fee agreement, which seems to be with Scott Goldberg is his capacities across multiple companies considering the source of payment was always Fresh Mix and GFSI, Leslie was very much involved directly for Fresh Mix throughout the litigation and arbitration proceeding.[8]

27. The Trustee has not employed Leslie to represent the Trustee or the bankruptcy estate, and Trustee's counsel sent Leslie a letter on or about May 28, 2021 formally requesting that Leslie provide the Trustee with copies of the Debtor's legal records. *See* **Exhibit "14"** to Schwartzer Declaration.

28. Leslie did not provide the legal files to the Trustee, but the Trustee did receive a letter from Samuel A. Schwartz, Esq., counsel for petitioning creditor GFSI, on or about June 3, 2021 relating to the Trustee's request. *See* **Exhibit "15"** to Schwartzer Declaration. This letter was copied to Betsy Lamm, Esq. of CDQ, Debra L. Spinelli, Esq. of Pisanelli Bice and Bruce

---

[8] Pisanelli Bice's and Cohen Dowd Quigley's fee agreements have already been filed with this Court in connection with the Motion and Adversary against PB and Motion against CDQ for turnover of their records pursuant to NRS 7.055 and ER 1.16 (Arizona or Nevada as appropriate).

Stern & Eisenberg ATTORNEYS AT LAW

Leslie, Esq., all of whom are prior counsel of Debtor who have all received similar letters on May 28, 2021 from the Estate. As of the date of this Motion, none of the prior counsel has complied with the May 28, 2021 demand for the legal files. The June 3, 2021 letter from GFSI counsel mischaracterizes the Trustee's turnover request as a discovery dispute, and incorrectly implies the Trustee is required to pre-notify GFSI of the Trustee's attempts to recover estate property and/or records from third parties, but clearly states that GFSI objects to the Chapter 7 Trustee's request for turnover of the Debtor's legal records.

29. On or about February 8, 2022, Stern & Eisenberg, PC ("S&E") was appointed special counsel to the Chapter 7 Trustee [ECF 433, incorporated by reference] in order to pursue the arbitration and state court matters on behalf of the Chapter 7 Trustee.

30. Special Counsel engaged in a dialogue with Leslie. The email chain is attached as ***Exhibit "16"***. Ultimately, Leslie has retained the services of Robert Bare, Esquire.

31. Leslie is aware of the language of NRS §7.055(3), which allows Leslie to interplead all questionable content directly to the Court. Leslie, through counsel, has advised that he will abide by what the Court directs.

32. Leslie, directly and through counsel, has taken the position that he believed he only represented the interests of GFSI, notwithstanding the fact's to the contrary set forth above that he provided legal advice to Fresh Mix and was clearly paid by Fresh Mix.

15. It is important to note that GFSI (as the prior majority owner[9] of the Debtor)

---

[9] ECF 461, Exhibit 1, as well as other filings have pointed to the position that GFSI is no longer the majority member of Fresh Mix. The Operating Agreement (Exhibit 1, Operating Agreement, Section 5.2(a), page 51) establishes five people as Managers of Fresh Mix, those people are Dominic Caldara, Scott Goldberg, John Wise,

made the strategic decision to put the Debtor into an involuntary bankruptcy, at which point the Debtor and GFSI became adverse parties. Upon the appointment of the Trustee, the Debtor's attorney-client privileges and rights to collect Debtor's property and records passed to the Trustee. It is unclear if GFSI was aware of that consequence when it decided to place the Debtor in bankruptcy, but the right to the Debtor's legal records and attorney-client privileges are now in the control of the Trustee, regardless of GFSI's objection.

13. The Debtor's legal records are necessary for the Trustee's investigation, and there is no basis to allow GFSI nor Leslie to obstruct turnover of those records. At this stage, it is clear the Debtor's legal records will not be turned over to the Trustee absent an order of this Court.

## III. MEMORANDUM OF LAW

At the heart of the instant matter are what are the legal files belonging to Fresh Mix, what are Fresh Mix's rights to its legal documents with Leslie and what are the obligations of Leslie to provide those documents.

### *A. Fresh Mix's Legal Files and Entitlement to Them*

"Nevada law provides that the files amassed by an attorney in representing a client belongs to the client." *In re Hotels Nevada, LLC*, 458 B.R. 560, 567 (Nev 2011), citing to *Nev.Rev.Stat.* §7.055 ("NRS §7.055"). Additionally, under the broad scope of the Bankruptcy Code, 11 USC §541, even the notes and research memoranda prepared in representing Fresh Mix

---

Paul Lagudi and William Todd Ponder. Fresh Mix LLC is a Delaware entity and its privilege prior to the Bankruptcy belonged to the LLC and its Managers, but upon the granting of the Petition, the privilege also belongs to the Estate and the Chapter 7 Trustee. See *Newsome v. Lawson*, 286 F.Supp3d 657 (D.Del 2017).



Stern&Eisenberg ATTORNEYS AT LAW

Stern&Eisenberg ATTORNEYS AT LAW

are property of the Estate. *Id.* at 567.

Pursuant to NRS §7.055 an attorney who has been discharged shall, "immediately deliver to the client all papers, documents, pleading and items of tangible personal property which belong to or were prepared for that client." NRS §7.055(1). When there is a dispute over the rights to the lawyer documents NRS §7.055(3) provides a safe harbor whereby counsel "may" turnover those items to the Court for further determination.

When an attorney fails to timely turn over the legal files, NRS §7.055(2) provides the Court with significant authority to address prior counsel's failure to surrender the documents to the client. (The statute is shared at section iii, below.)

Nevada Rule of Professional Conduct 1.16(d) provides that upon termination of the representation, the lawyer "shall take steps to the extent reasonably practicable to protect a client's interests, such as…, surrendering papers and property to which the client is entitled". *Nev. RPC §*1.16.

Nevada RPC 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Although not directly applicable to the situation with Leslie, the CDQ firm raised the applicability of Arizona's RPC ER 1.16(d) which is very similar to Nevada's rule, however at note (9) to Arizona's rule it provides clarity as to what must be surrendered to the client; which is:

> Ordinarily, ***the documents to which the client is entitled, at the close of the***

Stern & Eisenberg ATTORNEYS AT LAW

> ***representation, include (without limitation) pleadings, legal documents, evidence, discovery, legal research, work product, transcripts, correspondence, drafts, and notes***, but not internal practice management memoranda. A lawyer shall not charge a client for the cost of copying any documents unless the client already has received one copy of them.

Arizona RPC ER 1.16, note (9).

Leslie owes a duty to provide Fresh Mix with all of the documents that it has or had in its possession. Leslie admitted that he was outside counsel to both Fresh Mix and GFSI. He consistently worked with both CDQ and PB. The other counsel thought he represented Fresh Mix; and even Fresh Mix and GFSI thought he provided legal counsel to both as they split the bills, equally.

***i. All Documents within the Scope of the Concurrent Representation belong to both Fresh Mix and the GFSI Parties equally. There is no ability for Leslie to hold files from Fresh Mix at the Request of GFSI.***

Leslie has acknowledged on multiple occasions that it concurrently represented Fresh Mix and the GFSI Parties in the underlying litigation involving Fresh Mix and GFSI. Specifically, Leslie was concurrent counsel to Fresh Mix and the GFSI Parties working with Fresh Mix's other concurrent counsel throughout the litigation and arbitration proceedings.

As Leslie must be fully aware, there is no privilege between clients represented by the same counsel. *In Re Hotels Nevada, LLC*, 458 B.R. 560, 570-571 (Nev 2011). The joint privilege doctrine seeks to maintain privilege as to third parties outside of the concurrent representation, but does not provide any protections nor claims of privilege between those clients represented by a common counsel. *In Re Hotels Nevada, LLC*, 458 B.R. 560, 571 (Nev 2011). The Nevada Bankruptcy Court pointed to the Third Circuit case of *Teleglobe USA Inc. v. BCE,*

*Inc.*, 493 F.3d 345, 366 (3d Cir. 2007) regarding the concept of joint privilege:

> The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside of the joint representation. When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable… This rules has two bases: (1) the presumed intent of the parties, and (2) the lawyer's fiduciary obligation of candor to both parties.
>
> - *In Re Hotels Nevada, LLC*, 458 B.R. 560, 571-572 (BKNev 2011) quoting *Teleglobe.*

Judge Markell pointed out in the *In re Hotels Nevada, LLC* matter that there is no privilege between parties under the joint privilege doctrine; he then goes own to visit if there is even a privilege at all. *In re Hotels Nevada, LLC,* 458 B.R. 560, 574 (Nev 2011). The Court looked to *United States v. Graf*, which provides the required elements to establish a privilege, if there even is one. *Id.* Ultimately, Judge Markell ordered that the attorney documents be provided to the Estate. The decision in *In re Hotels Nevada* is supported by another case interpreting *Teleglobe,* albeit in the United States District Court for Delaware. See *Newsome v. Lawson*, 286 F.Supp3d 657 (D.Del 2017).[10] For purposes of this instant motion by the Estate, the Court does not need to even examine whether or not a privilege against third parties has failed as a result of the conduct of GFSI, rather under the joint privilege doctrine GFSI has no claim of privilege against Fresh Mix. See *In re Hotels Nevada, LLC* and *Newsome v. Lawson*.

To the extent any GFSI related companies has utilized Leslie's services, they have done so knowing that Leslie was also providing legal services to Fresh Mix. The consequences of that fateful decisions lies at the feet of GFSI and its ownership, not anyone else. There should be no

[10] The Court should also look to *USA v. Holmes*, 2021 WL 2309980 (ND Cal. 2021) as it is questionable as to whether or not there is any privilege protections at all given CDQ's representation of so many parties, including those clearly outside the scope of the fee agreement.



Stern&Eisenberg ATTORNEYS AT LAW

limitation on the documents produced by Leslie as GFSI should not be permitted to hide any information that may be relevant to the instant proceeds.

***ii. The Estate May Proceed to Recover its Legal Documents by Motion***

Pursuant to both State law and Bankruptcy Law, the Estate may file a motion to enforce the Estate's rights to its legal documents. See NRS 7.055(2) and *In re Hotels Nevada, LLC,* 458 B.R. 560, 573 (Nev 2011).

***Nevada Revised Statute §7.055***

NRS 7.055(1) provides:

> ***An attorney who has been discharged by his or her client shall***, upon demand and payment of the fee due from the client, ***immediately deliver to the client all papers, documents, pleadings and items of tangible personal property which belong to or were prepared for that client.*** (Emphasis added)

Demand for the legal documents was made on May 28, 2021 and then again on February 9, 2022 telephonically and by email chain initiated by Special Counsel on February 16, 2022. Leslie has yet to provide anything to the Estate although Leslie has obtained counsel, Robert Bare, Esquire to navigate the demand for Leslie's records. NRS 7.055(3) provides a safe harbor allowing Leslie to turn over the items in doubt over to this Court; it is believed that the engagement of Mr. Bare, as counsel, is similar to Leslie seeking shelter under this safe harbor provision. Leslie also has a duty to the Estate under RPC 1.16, and appears ready, willing and able to abide by the decision of this Court.

Where the firm resists its legal obligations to the client (the Estate), NRS 7.055(2) provides the remedy:



Stern&Eisenberg ATTORNEYS AT LAW

NRS 7.055(2) specifically provides:

> ***A client who***, after demand therefor and payment of the fee due from the client, ***does not receive from his or her discharged attorney all papers, documents, pleadings and items of tangible personal property may, by a motion filed after at least 5 days' notice to the attorney, obtain an order for the production of his or her papers, documents, pleadings and other property. If the court finds that an attorney has, without just cause, refused or neglected to obey its order given under this section, the court may, after notice and hearing, adjudge the attorney guilty of contempt and may fine or imprison him or her until the contempt is purged. If the court finds that the attorney has, without just cause, withheld the client's papers, documents, pleadings or other property, the attorney is liable for costs and attorney's fees.***

Motion practice is authorized. Likewise, NRS 7.055(2) sets forth the relief that may be granted, including the turnover of the legal documents.

***The Bankruptcy***

As a result of the Bankruptcy, the property belonging to Debtor became the property of the Estate. See 11 USC §541. The Trustee has the same rights of the Debtor, plus additional powers provided under the Bankruptcy Code; those rights include the Debtor's rights under NRS 7.055.

A motion is the appropriate process by which this Court may make a determination as to Leslie's contempt. GFSI's failure to recognize the consequences of its actions is not a basis to restrict or restrain the scope of compliance placed upon Leslie. See *Newsome.*

[Rest of Page Intentionally Left Blank]



Stern & Eisenberg ATTORNEYS AT LAW

Stern&Eisenberg ATTORNEYS AT LAW

## IV. CONCLUSION

Pursuant to Nevada Revised Statute §7.055, the Trustee requests that this Court enter judgment in favor of the Trustee and against respondent(s)[11], Bruce A. Leslie Chtd. and Bruce A. Leslie, Esquire ("Leslie"):

1. Compelling Leslie to turn over all recorded information of and relating to Leslie's representation of the Debtor, GFSI and the GFSI Parties, within ten (10) calendar days from entry of the Order granting this motion, including:

   a. Any and all documents and other materials furnished to Leslie by the Debtor;

   b. Any correspondence between Leslie and the Debtor;

   c. Any correspondence between/amongst Leslie and third parties relating to its representation of the Debtor, GFSI and the GFSI Parties, including but not limited to the State Court Litigation and/or Arbitration and/or any sale of any of the businesses;

   d. Copies of any pleadings, briefs, applications and other documents prepared by Leslie and filed with courts or other agencies on the Debtor's behalf;

   e. Copies of contracts, corporate records, and other similar documents prepared by Leslie for the Debtor, GFSI and/or GFSI Parties used in the State Court Litigation and/or Arbitration and.or any sale of any of the businesses;

   f. Any administrative materials relating to the representation of the Debtor and GFSI including memoranda concerning potential conflicts of interest

---

[11] To the extent the Court believes that relief is appropriate against all prior counsel at this time pursuant to NRS §7.055, then Special Counsel requests that the relief sought herein be granted against all prior counsel appearing in opposition to this Motion who have not already surrendered the full legal documents to the Estate. The reality is that on June 3, 2021, the letter from GFSI Counsel amounts to his entry into and interference with the attorney-client relationship between the Estate and its prior counsel. To the extent those prior counsel have relied upon the actions of GFSI Counsel to represent their interests, then it appears GFSI Counsel is acting on behalf of those parties and they are actively represented in this proceeding already.

Stern&Eisenberg ATTORNEYS AT LAW

or the client's creditworthiness, time and expense records, or personnel matters; and

g. All attorney notes, drafts, internal memoranda, legal research, correspondence, evidence, discovery, work product, transcripts, and factual research materials, including investigative reports, prepared by or for Leslie for the use by Leslie in its representation of the Debtor, GFSI and/or the GFSI Parties in the State Court Litigation and/or Arbitration and/or sale of the businesses. And,

h. All attorney notes, drafts, internal memoranda, legal research, correspondence, evidence, discovery, work product, transcripts, and factual research materials, including investigative reports, prepared by or for any lawyer of Leslie for the use of Leslie in its representation of the Debtor, GFSI and/or the GFSI Parties in any capacity from April 12, 2018 through October 20, 2020;

i. Any and all communications of any kind, including, but not limited to, attorney notes, drafts, internal memoranda, legal research, correspondence, evidence, discovery, work product, transcripts, and factual research materials, including investigative reports, between/amongst Leslie and/or anyone from Pisanelli Bice, PLLC and/or Cohen Dowd Quigley, PC from April 12, 2018 through February 18, 2022 regarding Debtor, GFSI and/or the GFSI Parties, including, but not limited to, Dominic Caldara, Scott Goldberg, John Wise, Get Fresh Sales, Inc., Get Fresh Kitchen, LLC, Fresh Cuts, LLC or any other entity owned or controlled by Caldara, Goldberg and/or Wise.

2. For sanctions pursuant to NRS 7.055(2) and for such other and appropriate relief this Court deems just and appropriate given the conduct of CDQ and to deter CDQ from failing to adhere to the Court's Order.

3. Notwithstanding, while the Trustee believes the "Privileged Memorandum" is within the scope of the joint-privilege, it is not immediately needed for the Trustee to proceed with administration of the Estate; the Trustee is willing to wait for the State Court Motion for Reconsideration to be further advanced to determine if he will seek it. Out of an abundance of caution, the Trustee asks that Leslie be directed to turn over all items to the Estate with the exception of the "Privileged Memorandum". The Privileged Memorandum should be retained by Leslie until such time as there is further direction from the State Court (or the Trustee seeks

further relief before this Court, as may be appropriate based upon the State Court proceedings). To the extent the Privileged Memorandum was provided to anyone else, those communications should be provided with only the Privileged Memorandum redacted. Further to the extent there are any redactions, Leslie should be required to provide a detailed privilege log regarding each such redaction.

Dated: May 3, 2022.

/s/Steven K. Eisenberg, Esquire
Steven K. Eisenberg, Esq.
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pennsylvania 18976
*Special Counsel for Lenard E. Schwartzer, Trustee*
*Admitted Pro Hac Vice*

Stern & Eisenberg ATTORNEYS AT LAW