_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
November 16, 2023
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No.: 20-12051-gs |
| | ) Chapter 7 |
| FRESH MIX LLC, | ) |
| | ) |
| | ) **IN PERSON Hearing Date** |
| Debtor. | ) Hearing Date: **November 30, 2023** |
| | ) Hearing Time: **1:30 p.m.** |
| | ) |

**ORDER TO SHOW CAUSE RE DISMISSAL**

On November 7, 2023, the court enter its Order Setting Case Status Conference for the next day, November 8, 2023, to "address its concerns as to the good faith of the bankruptcy filing and discuss whether the court should proceed to issue an order to show cause why the case should not be dismissed. ECF No. 1098 at 2. The court held the status conference as scheduled. Appearances were as noted on the record. The court discussed its continuing concern that the bankruptcy filing was predominantly serving nonbankruptcy interests. At the conclusion of the status conference, the court scheduled a hearing for November 30, 2023 to further address the court's concerns. The court also provided that parties in interest could file written responses, but that the court would also enter an order to show cause why the case should not be dismissed under 11 U.S.C. §§ 105(a) and 707(a), providing additional discussion of the court's concerns.

Get Fresh involuntarily placed Fresh Mix into bankruptcy on April 23, 2020. ECF No. 1. The involuntary petition was signed by Scott Goldberg on behalf of Get Fresh. It alleged that Fresh Mix was not generally paying its debts as they became due. Get Fresh stated that it was a creditor of Fresh Mix owed $159,807. *Id*. at 2.  It further alleged that Fresh Mix had less than 12 creditors. *Id*. at 3.

Lagudi and Ponder moved to dismiss the case and sought to intervene to contest the petition. ECF Nos. 11, 17 and 102. The court denied both motions but appointed an interim chapter 7 trustee. ECF Nos. 59, 61 and 146.

The Trustee reported that on the very day Get Fresh filed the involuntary bankruptcy based on its contention that Fresh Mix was unable to pay its ongoing bills as they came due, including the $159,807 owed to it, "the managers appointed by Get Fresh caused Fresh Mix to make a distribution of $2,300,000 to insiders," including $1,380,000 to Get Fresh. ECF No. 99 at 5:2-5. This led the Trustee to conclude *if* the court were to consider a declaration presented by Edward M. Burr, Jr. and others[1] there was "a bona fide dispute as to Get Fresh's claim and the [sic] Get Fresh is not qualified to be a petitioning creditor." ECF No. 99 at 18; *see also* ECF No. 144 ("In order to file an involuntary bankruptcy, Section 303 of the Bankruptcy Code requires that they have a claim which is not subject to a bona fide dispute, but this Court has, in its files, the motions filed by the minority members, which include declarations which indicate that the claim of Get Fresh is in dispute, and it appears to be, from my point of view, a bona fide dispute."). The Trustee was clear that if the case was placed into chapter 7 the Trustee would pursue the claims, including the distributions to Get Fresh and the other members. But the Trustee also dutifully reported that no party *with standing* had contested the involuntary petition. *See id.* at 31. That being the case, the Trustee conceded that arguably the court was required to enter the order for relief under § 303(h). Indeed, the court ultimately entered the order to permit the Trustee to pursue the claims against Get Fresh. ECF No. 146. The court never ruled on whether Get Fresh's claims were undisputed.

On August 20, 2020, Fresh Mix filed its schedules. ECF No. 155. The schedules were signed by Scott Goldberg. Schedule A/B reflected $89,034.00 in assets, comprised of cash held in a Wells Fargo bank account. *Id.* at 3. Schedule E/F listed $207,898.39 in unsecured debt. *Id*. at 8-9. The Statement of Financial Affairs disclosed member distributions of $2,044,360, $1,022,179.50, and $340,726.50 to Get Fresh, Lagudi, and Ponder, respectively, within one year of the filing. *Id*. at 13.

---

[1] These declarations were filed under seal in support of the minority interest holders' first motion to dismiss the case filed on May 1, 2020. ECF Nos. 11-15.

Fresh Mix also disclosed roughly $1,500,000 in legal indemnification payments to Get Fresh and Lagudi within the year prior to the bankruptcy filing. *Id.*

The Trustee has aligned the estate with the minority members and brought state law claims against Get Fresh and its owners, Scott Goldberg, Dominic Caldara, and John Wise. The estate has also sought turnover of legal files from counsel that had previously jointly represented Get Fresh and Fresh Mix. *See* ECF Nos. 473, 524; Adv. Proc. No. 22-01049-gs. Get Fresh and the law firms have vigorously opposed turnover of the documents or the estate's use of such documents. The court has previously terminated the automatic stay to permit the arbitration to proceed. ECF Nos. 435, 437. Currently, the arbitration is scheduled to begin in February 2024.

The court has previously raised and addressed its concerns that currently the non-insider claims against the estate are limited to the Internal Revenue Service in the amount of $23,433.80 and Gerety & Associates for $3,410. Get Fresh has filed a claim for $1,390,313. Minority members Paul Lagudi and William Todd Ponder originally filed claims for $21,8881,930 and $7,960,643 respectively.  On December 16, 2021, Lagudi and Ponder stipulated to the entry of an order recharacterizing their claims "as arising only from their equity interests." ECF No. 404 at 2.

Well over a year after the deadline to file proofs of claim, LC Marketing Corp. filed an unsecured claim for $6,700,000, signed by its president, Elizabeth Cohen Dideriksen. During an evidentiary hearing on Get Fresh's objection to the late filed claim, Cohen testified that Paul Lagudi helped to draft the narrative attached to the proof of claim. ECF No. 844 at 88:22-25. Less than a month after LC Marketing filed its claim, it assigned the claim to EITE Recovery, LLC. ECF No. 830-2. Paul Lagudi's son, Roman, had created EITE the same day LC Marketing filed its proof of claim. ECF No. 830-5. The testimony during the hearing on the claim objection was that EITE pledged to pay LC Marketing ten percent of any recovery on proof of claim 7-1. ECF No. 844 at 15:14-25. Cohen testified that she agreed to transfer proof of claim 7-1 to EITE because she is "just really busy" and "was fine with it."  *Id.* at 90:5-9. The court sustained the claim objection and disallowed the claim. ECF Nos. 915-16. That ruling is currently on appeal. ECF No. 937.

To date, the estate has incurred well over $400,000 in administrative expenses. The only asset it is actively pursuing remains the claims against Get Fresh and its owners within the arbitration, though

the estate has stipulated to extend the deadlines related to other claims. The present situation, however, is such that the only meaningful unsecured creditor of the estate is Get Fresh, whose stated original claim of $159,500 ballooned to $1,390,313 based on the addition of $1,165,706 in undocumented legal fees and expenses. Proof of Claim No. 6-1. Yet, the means to pay Get Fresh depends upon the estate's recovery *against Get Fresh*, either by obtaining judgment in the arbitration or as part of avoidance actions to be filed against Get Fresh, Lagudi, and Ponder. This appears to make no sense. Indeed, the estate's participation in the arbitration appears to be primarily for the benefit of Lagudi and Ponder, and includes the aforementioned efforts to obtain the legal files from counsel that jointly represented Get Fresh and Fresh Mix.

The court has significant concerns that the bankruptcy was improperly commenced solely by an insider based upon a disputed debt to disadvantage the minority members and obtain an advantage in the state court action and arbitration. Having successfully placed Fresh Mix into chapter 7, it is questionable that the bankruptcy has proceeded as Get Fresh intended.  The estate has sought to aggressively litigate against Get Fresh, though it appears primarily for the benefit of minority members. The commencement and continued administration of the bankruptcy, therefore, raises additional questions whether it serves a proper bankruptcy purpose. For these reasons, the court gives notice that it shall hold a hearing and require parties in interest to show cause why the bankruptcy case should not be dismissed for abuse of process under 11 U.S.C. § 105(a), or alternately for cause under § 707(a).  *See generally In re Carter,* 2017 WL 11647646 (Bankr. M.D.N.C. Mar. 28, 2017).

    **A.  Dismissal for abuse of process under § 105(a).**

Section 105(a) of the Bankruptcy Code expressly empowers a Court to correct an abuse of process and to do so *sua sponte*. It provides that "[t]he court may issue any order … that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte taking any action or making any determination necessary or appropriate to … prevent an abuse of process." 11 U.S.C. § 105(a). "While 'abuse of process' under § 105(a) is not defined in the Bankruptcy Code, a few courts essentially define it as 'maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system.'" *Trevino v. HSBC Mortg. Svcs., Inc., et al. (In re Trevino)*, 615

B.R. 108, 128 (Bankr. S.D. Tex. 2020) (quoting *In re Calder*, 93 B.R. 739, 740 (Bankr. D. Utah 1988)); *see also In re Miszko*, 627 B.R. 809, 816 (Bankr. S.D.N.Y. 2021); *In re Fivecoate*, 634 B.R. 720, 730 (Bankr. D.S.C. 2021).

In its Order Setting Case Status Conference, the court cited to *In re Davis*, 278 B.R. 429, 432 (Bankr. W.D. Mich. 2002) and *In re Lavie*, 2019 WL 5585012 (Bankr. C.D. Cal. Oct. 15, 2019). ECF No. 1098 at 2. In *Davis,* the bankruptcy court dismissed an involuntary chapter 7 case sua sponte. The debtor filed the involuntary bankruptcy case against a federal prosecutor who had obtained a criminal conviction of the petitioning party shortly before his sentencing. The court noted that the petition was "largely incomprehensible," 278 B.R. at 430, and "nothing more than a convicted criminal's fantasy." *Id.* at 432. The court concluded that dismissal of a bankruptcy "is warranted when the case is abusively filed." *Id*. And "in egregious instances, *sua sponte* dismissal is warranted." *Id.* The situation in *Davis* certainly represents an extreme example of egregious conduct in filing an involuntary petition, but the point remains: bankruptcy courts may *sua sponte* dismiss a bankruptcy for abuse of process in appropriate circumstances that threaten the integrity of the bankruptcy process. The bankruptcy court in *Lavie* reached a similar conclusion and dismissed an involuntary petition upon the realization that allegations in the petition were false. 2019 WL 5585012 at *2. The *Lavie* court also dismissed the case sua sponte under 11 U.S.C. § 105(a) rather than § 303(j).

The above factual recitation is not intended to be an exhaustive discussion or analysis of the court's concerns but rather provides parties in interest with an understanding of the basis for those concerns. While litigating with the minority members of Fresh Mix, the majority member involuntarily placed the debtor into bankruptcy immediately after distributing over $2 million to members, only to then claim that it could not pay roughly $200,000 in undisputed debt, including roughly $150,000 owed to itself. Mr. Goldberg acted on behalf of the petitioning creditor and the involuntary debtor. Though clearly subject to colorable avoidance claims exceeding the $150,000 debt, as well as the arbitration claims, Mr. Goldberg failed to contest the involuntary petition though the interim trustee found that the sole petitioning creditor's claim was clearly disputed. As argued by the minority members in their efforts to dismiss the involuntary petition, Get Fresh could not *voluntarily* place

Fresh Mix into bankruptcy because it required the approval of a supermajority (75%) of the members. *See, e.g.,* ECF No. 102 at 9:13-20. All of this strongly suggests an improper bankruptcy purpose.

Having been placed into bankruptcy, the estate had sufficient liquid assets to pay the limited claims filed against the estate, subsequent to the stipulation with Lagudi and Ponder recognizing their interests were equity rather than debt. Moreover, given the member distribution to Get Fresh immediately prior to Get Fresh filing the involuntary petition, the estate appears capable of disallowing Get Fresh's claim under 11 U.S.C. § 502(d). The continued administration of the estate, therefore, also raises questions of whether it serves a valid bankruptcy purpose.

### B.  Dismissal for cause under § 707(a).

Courts may also dismiss a chapter 7 bankruptcy for cause under § 707(a). Section 707(a) specifically lists three instances of cause to dismiss, none of which appear to apply in this instance. However, "[t]he grounds that § 707(a) lists as providing 'cause' for dismissal are illustrative and not exhaustive." *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir. 2000). The Ninth Circuit has adopted a more restrictive application of cause than some other courts. In *Padilla*, the Ninth Circuit concluded that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)." *Id*. But as the court in *Laine v. Gregory-Laine (In re Laine)* observed: "Courts considering motions to dismiss for cause consider far more than the debtor's financial capabilities or motivations. They are to consider whether the debtor has a 'frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process.'" 383 B.R. 166, 173 (Bankr. D. Kan. 2008) (quoting *In re Christiansen*, 251 B.R. 69, 70 (Bankr.W.D. Mo. 2000)). Indeed, the Ninth Circuit Bankruptcy Appellate Panel has stated "that under appropriate factual circumstances, filing an involuntary petition for reasons inconsistent with the purposes of the Bankruptcy Code may constitute 'cause'"for dismissal under § 707(a)." *Alliance United Ins. Co. v. Krasnoff (In re Venegas)*, 623 B.R. 555, 564 (B.A.P. 9th Cir. 2020). Where "there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to § 707(a) 'cause.'" *Id.* at 563 (collecting cases).

Accordingly, the court's concerns suggest that Get Fresh's filing of the involuntary petition, and possibly the continuation of the bankruptcy, are to further the members' continuing disputes

amongst themselves rather than serve any legitimate bankruptcy purpose.  Admittedly, those intended purposes have appeared to flip with the estate's decision to sue Get Fresh and pursue turnover of the legal files for Fresh Mix. Still, those interests appear to be wholly capable of resolution in the arbitration outside of bankruptcy.  For these reasons, the court shall also require the parties in interest to show cause why the bankruptcy case should not be dismissed for cause under § 707(a).

The undersigned was assigned this case well after the entry of the order for relief. ECF No. 316. The court does not seek to revisit the entry of order for relief.  Rather, the court has slowly come to realize that its previously stated concerns regarding the administration of the bankruptcy may well be tied to the commencement of the bankruptcy. It has taken the court some time to appreciate the nuances of the case, and the concerns it has attempted to articulate over the past year. Having a better understanding as to the commencement of the case based on the record reflected in the docket, the court remains concerned that the filing and the continued administration of this bankruptcy represents an abuse of process serving nonbankruptcy interests and calling into question the integrity of the bankruptcy system.  Such concerns, if established, would merit dismissal as an abuse of process under § 105(a) or for cause under § 707(a).

For these reasons, as well as those stated on the record and in this court's Order Setting Case Status Conference (ECF No. 1098),

IT IS HEREBY ORDERED that the parties are directed to appear **in person** on **November 30, 2023 at 1:30 p.m.** before the undersigned in a courtroom in the Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada to show cause why this case should not be dismissed as an abuse of the Bankruptcy Code under 11 U.S.C. §§ 105(a) and 707(a). The United States Trustee is invited to attend and participate.

IT IS FURTHER ORDERED that the parties must file their briefs addressing the issues raised at the November 8, 2023, status conference with the court and serve them **no later than November 28, 2023**.

IT IS SO ORDERED.

* * * * *

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #