Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
saschwartz@nvfirm.com
Athanasios E. Agelakopoulos, Esq.
Nevada Bar No. 14339
aagelakopoulos@nvfirm.com
Jason J. Thomas, Esq.
Nevada Bar No. 16148
jthomas@nvfirm.com
SCHWARTZ LAW, PLLC
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone: (702) 385-5544
Facsimile: (702) 442-9887

*Attorneys for Schwartz Law, PLLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>FRESH MIX LLC,<br><br>Debtor. | Case No.: 20-12051-GS<br><br>Chapter 7<br><br>Hearing Date: April 4, 2024<br>Hearing Time: 1:30 PM PDT |

**OPPOSITION OF SCHWARTZ LAW, PLLC TO THE MOTION AUTHORIZING THE CHAPTER 7 TRUSTEE TO TURNOVER FRESH MIX LEGAL RECORDS**

Schwartz Law, PLLC ("**SL**"), former counsel for Get Fresh Sales, Inc. ("**Get Fresh**"), former petitioning creditor and party-in-interest in the above-captioned and now-dismissed Chapter 7 case, hereby submits its opposition (the "**Opposition**") to the *Motion Authorizing the Chapter 7 Trustee to Turnover Fresh Mix Legal Records Surrendered by Pisanelli Bice, PLLC, Cohen Dowd Quigley, PC and Bruce A. Leslie, Chtd. to Fresh Mix LLC Pursuant to Dismissal of Chapter 7 Proceeding for Abuse of Process* [ECF No. 1203] (the "**Motion**") filed by Steven K. Eisenberg ("**Eisenberg**"), special counsel for Lenard E. Schwartzer, the Chapter 7 Trustee for the Estate of Fresh Mix (the "**Trustee**"), on behalf and as counsel for former debtor Fresh Mix LLC ("**Fresh**

**Mix**").[1] In support of this Opposition, SL respectfully states and represents as follows:[2]

## PRELIMINARY STATEMENT

1. The Motion concerns Disputed Records[3] which were the subject of the Turnover Motions and were later turned over to the Trustee by the Law Firms pursuant to the Turnover Orders. The Turnvoer Orders were issued pursuant to Section 542.

2. This bankruptcy was dismissed by order of the Court on January 22, 2024 (the "**Dismissal Order**"). The Dismissal Order vacates the Turnover Orders. *See* Section 349(b)(2). Therefore, there is no existing order resolving the issue of use and ownership of the Disputed Records and no basis for the relief sought by Fresh Mix in this Motion. Further, the Turnover Orders inured to the benefit of the Trustee and the estate of Fresh Mix. Former Debtor Fresh Mix lacks standing to enforce those orders, even if they were still in effect.

3. The filing of this Motion is particularly jarring given the circumstances. The Motion seeks to further extend the abuse of the bankruptcy process which was the basis for the Dismissal Order beyond even the dismissal of the case. Former minority owners of Fresh Mix Paul Lagudi and William Todd Ponder (collectively, "**Lagudi and Ponder**") are now 100% owners of Fresh Mix. Eisenberg, "Special Counsel" to the Trustee, is now also representing post-bankruptcy Fresh Mix. This Court repeatedly voiced concerns that the life of this bankruptcy was being artificially extended for the sole purpose of obtaining the Disputed Records for the benefit of Lagudi and Ponder in litigation in other forums. That is exactly what has transpired. Shortly after the Turnover Orders were issued, Lagudi and Ponder reached a settlement of claims with Get Fresh under which they were paid $25,000,000 and became sole owners of Fresh Mix.[4] Lagudi and Ponder then came

---

[1] The record of this proceeding is devoid of any evidence that Mr. Eisenberg is no longer special counsel to the Chapter 7 Trustee.

[2] Pursuant to Federal Rule of Evidence 201, as incorporated by Bankruptcy Rule 9017, SL requests the Court take judicial notice of the undisputed facts within the documents contained in the docket of this bankruptcy case.

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in this Court's *Protective Order Governing Turnover of Disputed Records* [ECF No. 1058].

[4] Not to be lost in the smoke, Lagudi and Ponder promptly turned around and paid a $100,000.00 spiff to the Chapter 7 Trustee, outside of the case, for which the Trustee stated he did

to this Court demanding that this case be dismissed as soon as possible, without providing time for potential objections.

4. At some unknown point during this process, Eisenberg added counsel for Fresh Mix to his duties, but not before being paid, completely off the books, by Lagudi and Ponder for his services as Special Counsel for the estate. The day before filing this Motion, Eisenberg filed a complaint on behalf of Fresh Mix against the Law Firms, Samuel A. Schwartz and SL, among others, in Nevada Federal District Court bringing claims including violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), legal malpractice, and fraud (the "**RICO Suit**"). *See* Complaint and Amended Complaint in RICO Suit, **Exhibit 1**. The claims relate to the alleged "joint representation" of Get Fresh and Fresh Mix by certain counsel at certain times. The claims in the RICO Suit are frivolous, particularly as to SL and Schwartz as neither represented Fresh Mix in any capacity at any time. In any event, this Motion has been filed for the sole purpose of aiding the post-bankruptcy, Lagudi-and-Ponder-controlled Fresh Mix, as represented by Eisenberg, in its new litigation against the Law Firms and others. We are quite far afield from any valid bankruptcy purpose at this point and the Trustee's true motives are now laid bare. The Court should not permit this continuing abuse of process. The Motion should be denied in its entirety and the Court should sanction Fresh Mix, the Trustee, and Eisenberg for their respective roles in the filing of this Motion.

## RELEVANT BACKGROUND

## I. THE BANKRUPTCY.

### A. Phase I – Prior to the Capping Motion and Turnover Motions.

5. On April 23, 2020, Get Fresh commenced the captioned main bankruptcy case by filing an involuntary petition for relief against Debtor pursuant to 11 U.S.C. § 303. (ECF No. 1).

6. On August 11, 2020, the Order Granting Involuntary Chapter 7 Petition ("**Order for Relief**") was entered. (ECF No. 146).

7. Future "Special Counsel" Eisenberg appeared on behalf of Lagudi and Ponder at the

not need the Court's authority.

341a Meetings on September 16, 2020, and October 13, 2020.

8. On July 23, 2021, the Trustee filed a Renewed Application to Employ Stern & Eisenberg as Special Litigation Counsel. (ECF No. 243).

**B. Phase II – The Capping Motion, Turnover Motions and EITE Claim**

9. On August 17, 2021, the Trustee filed a Motion to Compel Pisanelli Bice PLLC ("**PB**") to turn over Fresh Mix legal records. (ECF No. 263).

10. On January 26, 2022, Get Fresh filed its *Motion to Limit Estate Recoveries to the Amount Necessary to Satisfy Allowed Claims Against Debtor's Bankruptcy Estate* (ECF No. 425) (the "**Capping Motion**"). The Capping Motion sought to cap the Trustee's recoveries to the amounts necessary to satisfy the allowed claims of those entities that are legitimately considered creditors of Debtor's bankruptcy estate for distribution purposes pursuant to 11 U.S.C. §§ 510(b) 550, and 726(a)(6).

11. Get Fresh's Capping Motion was originally slated to be heard on March 10, 2022. SL respectfully submits that it was the prospect of the Capping Motion being granted that ultimately led to the late filing of the EITE Claim by LC Marketing Corp. ("**LC Marketing**").

12. Between February 2–14, 2022, numerous communications took place by and among Paul Lagudi, Eisenberg, the Trustee, and general counsel for the Trustee relating to LC Marketing and what would become the EITE Claim. *See* Trustee privilege log, **Exhibit 2**; excerpt from Schwartzer & McPherson fee application, **Exhibit 3**, at Page 28 (Page 12 of billing statement); S. Eisenberg email dated February 14, 2022, **Exhibit 4**.

13. On February 8, 2022, the Court entered its order granting the Trustee's renewed application to employ Stern & Eisenberg as Special Counsel. (ECF No. 433).

14. On February 14, 2022, LC Marketing tardily filed Proof of Claim 7-1 for $6,700,000. The original version of Proof of Claim 7 was solely for future damages, although the future damages claim was later withdrawn in its entirety during closing argument of the trial on Get Fresh's objection to the EITE Claim.

15. Also on February 14, 2022, EITE was formed by Paul Lagudi's son, Roman Lagudi.

16. On February 25, 2022, Get Fresh filed its objection to the EITE Claim. (ECF No. 442).

17. In February and March 2022, Eisenberg as Special Counsel for the estate of Fresh Mix began correspondence with counsel, Ryan Works, Esq. for EITE during which Eisenberg actively coached EITE's counsel – counsel for a party (a creditor) with interests adverse to the estate – with arguments that could be advanced to defeat an objection to a claim filed against Fresh Mix, Eisenberg's supposed client. *See* March 2022 emails from S. Eisenberg to R. Works, **Exhibit 5**.

18. On March 10, 2022, LC Marketing formally assigned its claim to EITE.

19. Also on March 10, 2022, the Trustee filed his complaint for turnover against PB. (ECF No. 452).

20. On March 19, 2022, Eisenberg as Special Counsel filed a motion to compel Cohen Dowd Quigley, P.C. ("**CDQ**") to turn over Debtor's alleged legal records. (ECF No. 473).

21. On May 3, 2022, Eisenberg as Special Counsel filed a Motion to Compel attorney Bruce A. Leslie to turn over Fresh Mix's alleged legal records (ECF No. 513).

22. On November 17-22, 2022, the trial regarding Get Fresh's objection to the EITE Claim took place.

23. As detailed below, months of discovery, motion practice, and three days of trial on the objection to the EITE Claim revealed that the claim was not filed in good faith and was the product of collusion between, primarily, Paul Lagudi, Eisenberg, EITE, and LC Marketing (the "**Colluding Parties**").

**C. Phase III – From the EITE Disallowance Order to the Turnover Orders.**

24. On March 22-23, 2023, the Court filed its *Memorandum Decision on Objection to Proof of Claim No. 7* (ECF No. 915) and *Order Sustaining Objection to Proof of Claim No. 7* (ECF No. 916) (collectively, the "**EITE Disallowance Order**").

25. On March 27, 2023, the Court issued its *Order: (1) Setting Case Status Conference; (2) Rescheduling Discovery Motions for In Person Appearance; (3) Staying Certain Motions; and*

*(4) Continuing March 30, 2023 Hearing on Motion to Disqualify* (ECF No. 925) (the "**Scheduling Order**"). There, the Court alerted the parties about the Court's concerns regarding the continued administration of the estate:

> The disallowance of EITE's claim now defines the scope of the bankruptcy estate. The proof of claim filed by Get Fresh Sales, Inc. (GFSI) comprises the overwhelming majority of claims… the court is concerned that administration of the case for purposes of litigating the state court action serves only the debtor's equity owners. It is hesitant, therefore, to enter orders on the pending motions that may serve only to further state court litigation rather than payment of the debtor's creditors. In short, the court is concerned that the minority owners should not receive the debtor's privileged documents if the only benefit is to further their state court litigation. The court is concerned that this does not appear to be a proper bankruptcy purpose.

(ECF No. 925, pgs. 1-2 of 3).

26. After a court-ordered settlement conference was unsuccessful, the parties appeared for a status conference on August 24, 2023, during which the Court observed, in reference to the Turnover Motions, that "it is abundantly clear to me at this point in time that this is truly discovery." Transcript of August 24, 2023 conference, **Exhibit 6**, page 24 (lines 8-10).

27. Ultimately, however, the Court issued the Turnover Orders as well as the accompanying protective order (ECF No. 1058) (the "**Protective Order**"). In its decisions on the Turnover Motions, the Court again expressed its concerns about the continued administration of the estate being an abuse of process:

> For the reasons previously expressed to the parties, the court is seriously concerned that the bankruptcy case is now being administered for the purposes of obtaining the debtor's legal records for the ultimate benefit of the minority owners which they would otherwise be unable to obtain.

*Memorandum Decision On (1) Motion To Compel Cohen Dowd Quigley, P.C. To Turn Over Debtor's Legal Records And For Sanctions And (2) Motion To Compel Bruce A. Leslie, Chtd. And Bruce A. Leslie, Esquire To Turn Over Debtor's Legal Records, For Sanctions, And For Other Relief* (ECF No. 1057), page 2 (lines 16-23).

**D. Phase IV – From the OSC to Dismissal.**

28. The Court issued its *Order to Show Cause Re Dismissal* (the "**OSC**") on November

16, 2023. (ECF No. 1118). As part of the discussion of the Court's "concerns" relating to abuse of process, the OSC provides the following summary of the EITE Claim:

> Well over a year after the deadline to file proofs of claim, LC Marketing Corp. filed an unsecured claim for $6,700,000, signed by its president, Elizabeth Cohen Dideriksen. During an evidentiary hearing on Get Fresh's objection to the late filed claim, Cohen testified that Paul Lagudi helped to draft the narrative attached to the proof of claim. ECF No. 844 at 88:22-25. Less than a month after LC Marketing filed its claim, it assigned the claim to EITE Recovery, LLC. ECF No. 830-2. Paul Lagudi's son, Roman, had created EITE the same day LC Marketing filed its proof of claim. ECF No. 830-5. The testimony during the hearing on the claim objection was that EITE pledged to pay LC Marketing ten percent of any recovery on proof of claim 7-1. ECF No. 844 at 15:14-25. Cohen testified that she agreed to transfer proof of claim 7-1 to EITE because she is "just really busy" and "was fine with it." *Id.* at 90:5-9.

(ECF No. 1118, pg. 3 of 7).

29. The Court observed that:

> … the estate's participation in the arbitration appears to be primarily for the benefit of Lagudi and Ponder, and includes the aforementioned efforts to obtain the legal files from counsel that jointly represented Get Fresh and Fresh Mix… The estate has sought to aggressively litigate against Get Fresh, though it appears primarily for the benefit of minority members. The... continued administration of the bankruptcy, therefore, raises additional questions whether it serves a proper bankruptcy purpose.

(ECF No. 1118, pg. 4 of 7).

30. On November 28, 2023, Get Fresh filed a *Notice of Settlement* (ECF No. 1134) which was signed by counsel for Lagudi and Ponder, EITE, the Trustee, and Fresh Mix notifying the Court that a settlement had been reached concerning all claims between those parties (the "**Settlement Agreement**"). This was followed by a *Joint Motion To Approve The Settlement Agreement Pursuant to FRBP 9019* filed on January 3, 2024 (the "**Joint Motion**"). (ECF No. 1142). The Joint Motion disclosed certain terms of the Settlement Agreement, but the agreement was not attached to the Joint Motion and has been described as "confidential." At the hearing on the Joint Motion, Lagudi and Ponder vigorously objected to any extension of time for consideration of potential objections and the Joint Motion was later withdrawn. As the Court summarized during the March 5, 2024, status hearing:

> … there was a notice of a settlement and Mr. Lagudi and Mr. Ponder insisted they get paid now, that there'd be no additional time spent in light of the objections or

> possibility of objections from the law firms, regardless of whether -- I mean, leaving the question of their standing up there. It had to happen. And everybody told me it had to happen now. So the parties elected for it to happen outside the bankruptcy, because it was settling and getting money to Lagudi and Ponder, who are not creditors of the estate, right? So the purpose of the bankruptcy was largely to administer this lawsuit, which was settled with the estate's claims in which the estate technically got nothing.

Transcript of March 5, 2024 status hearing, **Exhibit 7**, page 11 (lines 3-15).

31. The Dismissal Order was entered on January 22, 2024. The Dismissal Order states that the case "is immediately DISMISSED with prejudice for cause for abuse of process as stated in the OSC Re: Dismissal and on the record at the hearings held on November 30, 2023, January 11, 2024, January 12, 2024, and January 19, 2024." (ECF No. 1170, pg. 2 of 4).

## II. POST-DISMISSAL

32. On February 27, 2024, Eisenberg, on behalf of Fresh Mix, filed the initial complaint in the RICO Suit. **Exhibit 1**. An amended complaint was filed on March 12, 2024. **Exhibit 8**. The RICO Suit names as defendants the Law Firms, eight individual attorneys from the Law Firms, Brownstein Hyatt Farber Schrek, LLP, Samuel A. Schwartz, SL, Zachariah Larson, and Larson & Zirzow, LLC.

33. On February 28, 2024, Eisenberg filed this Motion on behalf of Fresh Mix.

34. At the March 5, 2024, status hearing Eisenberg, appearing on behalf of former debtor Fresh Mix, confirmed that he was paid by Lagudi and Ponder entirely outside the bankruptcy process for his services as Special Counsel to the estate. **Exhibit 7**, pages 18-19.

# ARGUMENT

## I. THE TURNOVER ORDERS HAVE BEEN VACATED; FRESH MIX LACKS STANDING.

### A. The Dismissal Order Vacated the Turnover Orders.

35. Section 349(b) of the Bankruptcy Code states, in relevant part: "Unless the court, for cause, orders otherwise, a dismissal of a case… (2) vacates any order, judgment, or transfer ordered, under section… 542."

36. The Turnover Orders were, of course, issued pursuant to Section 542. *See* ECF No.

1057 at pgs. 11, 13 and 22 of 22; Pisanelli Bice Adv. ECF No. 173 at pgs. 6, 11, 19 and 22-23 of 24. The Protective Order, meanwhile, is a procedural order concerning the use of records turned over pursuant to the Turnover Orders and its scope is explicitly limited to records turned over pursuant to the Turnover Orders. (ECF No. 1058, pgs. 2-4 of 8).

37. The Dismissal Order states that "for cause, any funds collected by the Trustee for the benefit of this bankruptcy estate shall not revest in any other party" following dismissal. (ECF No. 1170, pg. 2 of 4). The Dismissal Order makes no mention of the Disputed Records, the Turnover Orders or the Protective Order.

38. The Turnover Orders and Protective Order were clearly vacated by entry of the Dismissal Order and Fresh Mix cannot rely on those orders as a basis for the relief sought in the Motion.

39. Section 349(b)(3) is of no help to Fresh Mix, either. On the Petition Date, Get Fresh and Lagudi and Ponder were locked in bitter disputes over multiple matters, including the Disputed Records. Simply put, Fresh Mix did not have any "vested" rights in the Disputed Records on the Petition Date. Therefore, Section 349(b)(3) cannot now be invoked to "revest" in Fresh Mix Disputed Records that were not "vested" in Fresh Mix on the Petition Date in the first place. *See Ladder 3 Corp. v. Musso (In re Ladder 3 Corp)*, 768 Fed. Appx. 146, 147 (2d Cir. May 29, 2019). And since the Court did not retain jurisdiction in the Dismissal Order over the Disputed Records, Fresh Mix's arguments in the Motion necessarily fail. Fresh Mix's arguments under Section 349(b)(3) are, therefore, without merit, and SL's Opposition should be sustained, and Fresh Mix's Motion should be denied on this, basis, as well.

**B. Fresh Mix Lacks Standing to Bring the Motion.**

40. This case was dismissed pursuant to the Dismissal Order and Fresh Mix now comes before the Court as a former debtor. The Dismissal Order vacates the Turnover Orders and associated Protective Order. The Turnover Orders and Protective Order, when they existed, inured to the benefit of the Trustee and estate; the turnover was specifically limited to the Trustee. *See* ECF No. 1057 and 1058; Pisanelli Bice Adv. ECF No. 173.

41. Fresh Mix, as the former debtor, lacks standing to bring this Motion based on the Turnover Orders which, when they existed, inured to the benefit of the estate and concerned estate property. *See, e.g., Seward v. Devine*, 888 F.2d 957 (2d Cir. 1989). Because Fresh Mix lacks standing to bring this Motion, the Court lacks jurisdiction to grant the relief requested. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

42. As noted above, the Court lacks jurisdiction to adjudicate the Motion because the Dismissal Order did not expressly retain jurisdiction over the Disputed Records. Fresh Mix requests relief against non-debtor third parties that does not and cannot benefit a bankruptcy estate that no longer exists. Fresh Mix's Motion should be denied on this basis, as well.

## II. THE MOTION IS A CONTINUATION OF THE ABUSE OF PROCESS WHICH WAS THE BASIS FOR DISMISSAL.

43. While abuse of process under Section 105(a) is not defined in the Bankruptcy Code, courts have defined it as "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." *Trevino v. HSBC Mortg. Svcs., Inc., et al. (In re Trevino)*, 615 B.R. 108, 128 (Bankr. S.D. Tex. 2020) (quoting *In re Calder*, 93 B.R. 739, 740 (Bankr. D. Utah 1988)).

44. Here, as detailed above and at greater length in previous briefing to this Court, various "maneuvers [and] schemes" orchestrated primarily by Eisenberg and Lagudi — most notorious among them being the fabrication, filing, and prosecution of the frivolous EITE Claim — were used to artificially extend the life of this bankruptcy case after the filing of the Capping Motion and to use the bankruptcy process to gain an advantage for Lagudi and Ponder in the arbitration with Get Fresh. This abuse of the bankruptcy process was cited as a basis for the dismissal of this case. *See* ECF No. 1170 and ECF No. 1118.

45. Now, Eisenberg and Fresh Mix, as controlled by Lagudi and Ponder after their settlement with Get Fresh, seek to extend the abuse of process even beyond the Dismissal Order, asking this Court to order that the records be provided to Fresh Mix so that Fresh Mix may use the records in its RICO Suit. Enough is enough. The Court should tell Eisenberg and Fresh Mix to stop

burdening the Court with their bad faith maneuvers and schemes. The Motion should be denied in its entirety and Eisenberg and Fresh Mix sanctioned for filing it.

**III. FRESH MIX'S ARGUMENTS ARE UNAVAILING.**

46. In addition to relying on the Turnover Orders and Protective Order (all of which are vacated), Fresh Mix vaguely invokes the Court's broad equitable powers under Section 105(a), invokes Nevada law and, in scattershot fashion, references certain supposed terms of the Settlement Agreement as supposed bases for the relief it seeks. None of these provide a basis for granting the Motion.

47. The U.S. Supreme Court has instructed that Section 105(a) "is not a roving commission to do equity or to do anything inconsistent with the Bankruptcy Code." *Norwest Bank Worthingon v. Ahlers*, 485 U.S. 197 (1988). Eisenberg – now working openly for Lagudi and Ponder, asserts that: "It would be against the principals (*sic*) of equity to deprive Fresh Mix of its legal records (assets) in the possession of the Trustee in favor of Fresh Mix's prior counsel who it is (*sic*) alleged has (*sic*) acted negligently or intentionally in breaching their duties to Fresh Mix." Motion at paragraph 31. Fresh Mix's invocation of this Court's equitable powers, under the circumstances, is completely untethered from any valid bankruptcy purpose and is inconsistent, as discussed above, with the Bankruptcy Code. To grant the relief Fresh Mix urges would turn Section 105(a) into exactly the "roving commission to do equity" which the Supreme Court has instructed that it is not. Worse yet, Fresh Mix's requested relief inverts Section 105(a) to further enable an abuse of process, and the Court should not countenance such an inversion.

48. Fresh Mix also references Get Fresh's obligations under the Settlement Agreement at several points in the Motion, noting, for instance, that "GFSI is required to cooperate pursuant to the terms of the settlement agreement" and that Get Fresh has supposedly waived attorney-client privilege claims as to records for a certain period of time. Motion at paragraphs 14 and 35. The Settlement Agreement is not attached to the Motion and has not been provided to SL or the Law Firms, despite Fresh Mix's reliance on certain of its terms in the Motion. These supposed terms of the Settlement Agreement do not change the fact that this Court's Turnover Orders have been

vacated and there is nothing to enforce, that this case has been dismissed, that granting Fresh Mix the relief it requests would be a continuation of the abuse of process which was the basis for dismissal and that the Court now lacks jurisdiction to grant Fresh Mix the relief it requests. The Court may reject the Motion for any of these reasons without considering the terms of the Settlement Agreement. If the Court is at all inclined to grant the relief requested, however, SL and the Law Firms should be provided with a full copy of the Settlement Agreement to see the full context for the cited terms, to verify the existence of the cited terms, and to address in briefing, as necessary, any issues raised by the Settlement Agreement.

49. Lastly, Fresh Mix recycles, in abbreviated form, the arguments first made by Special Counsel Eisenberg when he was supposedly working for the estate based in Nevada law, specifically NRS 7.055. This is an attempt by a party without standing to essentially relitigate the Turnover Motions after the Turnover Orders have been vacated and should be disregarded. The Court lacks jurisdiction, at present, to issue rulings in favor of Fresh Mix based on Nevada law. Should the Court issue an order based on Nevada law, however, SL does not consent to entry of a final judgment by this Court, pursuant to Section 157(c)(1).

**CONCLUSION**

Wherefore, SL respectfully requests that the Court deny the Motion in its entirety and sanction Eisenberg and Fresh Mix for filing the Motion.

DATED: March 21, 2024.

Respectfully Submitted,

SCHWARTZ LAW, PLLC

By: /s/ *Samuel A. Schwartz*
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Athanasios E. Agelakopoulos, Esq.
Nevada Bar No. 14339
Jason J. Thomas, Esq.
Nevada Bar No. 16148
601 East Bridger Avenue
Las Vegas, Nevada 89101

*Attorneys for Schwartz Law, PLLC*