UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| IN RE: | . Case No. 20-12051-gs |
| | . Chapter 7 |
| FRESH MIX LLC, | . 300 Las Vegas Boulevard South |
| | . Las Vegas, NV 89101 |
| Debtor. | . |
| | . Thursday, April 4, 2024 |
| . . . . . . . . . . . . . . . . | . 2:03 p.m. |

TRANSCRIPT OF MOTION FOR TURNOVER AUTHORIZING THE CHAPTER 7 TRUSTEE TO TURNOVER FRESH MIX LEGAL RECORDS SURRENDERED BY PISANELLI BICE, PLLC, COHEN DOWD QUIGLEY, PC AND BRUCE A. LESLIE, CHTD., TO FRESH MIX LLC PURSUANT TO DISMISSAL OF CHAPTER 7 PROCEEDING FOR ABUSE OF PROCESS FILED BY STEVEN K. EISENBERG ON BEHALF OF FRESH MIX LLC [1203]; OST RE: EMERGENCY MOTION TO WITHDRAW AS ATTORNEY OF RECORD EX PARTE MOTION TO WITHDRAW AS COUNSEL AND TO REMOVE COUNSEL FROM CM/ECF SERVICE LIST ON AN ORDER SHORTENING TIME WITH CERTIFICATE OF SERVICE FILED BY FELICIA GALATI ON BEHALF OF BRUCE LESLIE CHTD., BRUCE LESLIE [1229]
BEFORE THE HONORABLE GARY A. SPRAKER
UNITED STATES BANKRUPTCY COURT JUDGE

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor: | Stern & Eisenberg, PC<br>By: STEVEN K. EISENBERG, ESQ.<br>1581 Main Street<br>Suite 200<br>Warrington, PA 18976<br>(215) 572-5025 |

APPEARANCES CONTINUED.

| | |
|---|---|
| Audio Operator: | Maria Garrett, Remote CRD |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46048<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TELEPHONIC APPEARANCES (Continued):

| | |
|---|---|
| For the Chapter 7 Trustee, Lenard Schwartzer: | Fox, Imes & Crosby, LLC<br>By: JASON A. IMES, ESQ.<br>601 South 10th Street<br>Suite 202<br>Las Vegas, NV 89101<br>(702) 941-6320 |
| For Pisanelli Bice: | GreeneInfuso<br>By: JAMES D. GREENE, ESQ.<br>3030 South Jones Boulevard<br>Suite 101<br>Las Vegas, NV 89146<br>(702) 570-6000 |
| For Bruce A. Leslie and Bruce A. Leslie, Chtd.: | Law Offices of Olson Cannon & Gormley<br>By: FELICIA GALATI, ESQ.<br>9950 West Cheyenne Avenue<br>Las Vegas, NV 89129<br>(702) 384-4012 |
| For Schwartz Law PLLC and Samuel A. Schwartz: | Schwartz Law<br>By: ATHANASIOS E. AGELAKOPOULOS, ESQ.<br>601 East Bridger Avenue<br>Las Vegas, NV 89101<br>(702) 385-5544 |
| For Get Fresh Sales, Inc.: | Greenberg Traurig<br>By: JASON HICKS, ESQ.<br>10845 Griffith Peak Drive<br>Suite 600<br>Las Vegas, NV 89135<br>(702) 792-3773 |
| For Cohen Dowd Quigley: | Andersen Beede Weisenmiller LLC<br>By: RYAN A. ANDERSEN, ESQ.<br>3199 East Warm Springs Road<br>Suite 400<br>Las Vegas, NV 89120<br>(702) 522-1992 |
| Chapter 7 Trustee: | LENARD E. SCHWARTZER, ESQ.<br>6655 West Sahara Ave, Suite B200-107<br>Las Vegas, NV 89146-8503<br>(702) 307-2022 |

(Proceedings commence at 2:03 p.m.)

THE COURT: -- 1:30, both arising in the Fresh Mix bankruptcy. As soon as I get to my calendar.

First is the motion for turnover authorizing the Chapter 7 trustee to turn over Fresh Mix legal records surrendered by Pisanelli Bice, Cohen Dowd Quigley, and Bruce A. Leslie, as well as the second matter which is the motion to withdraw as attorney of record filed by Ms. Galati.

We'll go ahead and note that this matter's being conducted remotely via Zoom video with both video and telephonic participation. We had some technical difficulties at the 1:30 hour and have reset this for two o'clock Las Vegas time.

I think we have most if not all of everyone. If anybody knows somebody that was on the Zoom at 1:30 and does not appear, I'll ask if you would just please reach out to them to let them know that we're up and running on the Vegas Zoom conference call.

With that, we'll go ahead and begin appearances, and Mr. Eisenberg, I will let you -- or ask you to lead us off, please.

MR. EISENBERG: Thank you, Your Honor. Steven Eisenberg, on behalf of Fresh Mix LLC.

THE COURT: All right. Thank you.

Mr. Imes?

MR. IMES: Good afternoon, Your Honor. Jason Imes, counsel for the Chapter 7 trustee, Lenard Schwartzer.

THE COURT: Thank you. Do we have Mr. Greene?

Anybody with the Infuso law firm for Pisanelli Bice?

MR. GREENE: Yes, Your Honor. I'm sorry. I was having trouble with the button. James Greene for Pisanelli Bice.

THE COURT: Thank you, Mr. Greene.

MR. GREENE: You're welcome.

THE COURT: All right. Ms. Galati?

MS. GALATI: Good afternoon, Your Honor. Felicia Galati appearing for Bruce A. Leslie and Bruce A. Leslie, Chartered.

THE COURT: All right, thank you.

Mr. Schwartz or Mr. Agelakopoulos?

MR. AGELAKOPOULOS: Good afternoon, Your Honor, and may it please the Court. Athanasios Agelakopoulos with Schwartz Law appearing on behalf of Schwartz Law PLLC and Samuel A. Schwartz.

THE COURT: Thank you.

All right, Mr. Hicks?

MR. HICKS: Good afternoon, Your Honor. Jason Hicks on behalf of Get Fresh Sales, Inc.

THE COURT: All right. Anyone else wishing to make an appearance?

MR. ANDERSEN: Good afternoon, Your Honor. Ryan Andersen, Andersen Beede Weisenmiller appearing on behalf of Cohen Dowd Quigley.

THE COURT: Thank you very much.

All right, anyone else?

MR. SCHWARTZER: Lenard Schwartzer, trustee.

THE COURT: Certainly, Mr. Schwartzer. Thank you.

MR. SCHWARTZER: Trustee because the case -- the Court has not discharged me as trustee at this point.

THE COURT: All right. Thank you.

All right. I believe that constitutes appearances, then. We'll go ahead and take the motion to turn over first.

I debated how to start this hearing. I think I'll give just a -- some preliminary thoughts. I have read the filings. Appreciate the briefing. This comes at the end of several years, and parties have heard the Court's thoughts. They have culminated in a finding of abuse of process in this case.

The abuse of process is somewhat chimera. It depends on who is doing the viewing to see who is abusing the process. The Court believes that there has been multiple, so it -- no one stands out above reproach in this regard.

So I understand the issue with the documents. However, in my mind, in my view, these documents are inherently tied to the abuse of process. That is why the Court initially

entered its order setting a conference as to why the matter should not be stayed about this time last year, did stay it, did unstay it, and then entered its orders for the production of the documents, or rather -- should be more precise -- the turnover of the documents to the trustee, but only the trustee, and not to be disposed or given to special counsel or the minority members. That's still the Court's concern, and the abuse of process has significance to the Court.

In some ways, this has a feel of the continuation of it. The return of property to a debtor or to the rightful owner is not meant to be advantageous. It is simply to give back that to which someone has title. Generally, that may well be physical property that has some inherent value. In this case, it's documents that were achieved by virtue of the bankruptcy and the trustee's succession to interest. The Court has dismissed that case, has not reserved anything other than the disposition of the funds held and any resolution of interest therein. So the turnover of documents falls outside that.

It's the Court's understanding, and I'm interested to hear if anyone disagrees, that these documents are not originals, in the concept of the olden days where there was a paper document with a wet signature that may or may not be more important than any copy that was made. Largely, these are computerized documents on a portal or collected through a

portal by Mr. Imes and the trustee. So there is no inherent value, as the Court sees, as to these documents as these documents held by the trustee except for ease of access and a less contentious, litigious path.

Court is aware from the briefing that there's another action ongoing or just commenced by Fresh Mix in the District Court against the law firms, and Mr. Schwartz is aware that Get Fresh has waived its interest or does not seek to preclude documents within a specified period from being recovered, turned over, produced, however you want to phrase it to Fresh Mix.

All of this leads the Court to a general feeling that this is not the Court's concern. This is a dismissed case. By the Court's reasoning, it should not have been filed, should not have been pursued, should have not taken up as much time as it has. There are avenues for the parties to recover or not recover what is theirs outside this bankruptcy. And I am loathe to put the trustee through any more activity in this regard.

So with that, I have read the parties' views of 349 and the effects of the dismissal.

Mr. Eisenberg, with that introduction, I will let you proceed with your argument.

MR. EISENBERG: Thank you, Your Honor.

Well, my argument is rather limited in scope, Your

Honor, and what I'll say is CDQ has already surrendered what they had surrendered to the trustee. So that is the limited purview that we have here, Your Honor, today.

There's this notion that you say abuse and turn over to the minority, Your Honor. There is no minority versus majority concern anymore, as Mr. --

THE COURT: That's not my world, though, Mr. Eisenberg.

MR. EISENBERG: So -- yeah.

THE COURT: My world is the bankruptcy in which they were clearly minority.

MR. EISENBERG: Understood, Your Honor. I think that changed prior to the end, but I understand your point. So --

THE COURT: But that gets us back to the abuse, which was the settlement. Right?

MR. EISENBERG: Yes.

THE COURT: All of that -- all of that leads into itself, and I keep raising this to kind -- to emphasize the seriousness with which the Court takes this and the consideration of it. So I don't think telling me now that Mr. Lagudi and Mr. Ponder are now Fresh Mix and you happen to be representing them does anyone any good in this argument.

MR. EISENBERG: Understood, Your Honor. So the limited scope of my argument is that the documents turned over to the trustee and that limited sphere of documents turned over

to the trustee, they're owned by somebody. And your original decisions, Your Honor, that were rendered while the bankruptcy was alive was those documents are owned by Fresh Mix. And so the limited scope is what does the trustee have, and who does he turn it over to. And that's it, Your Honor. I'm not looking to --

THE COURT: Why does he have to turn over anything? I mean, they're -- as I understand it, they're electronic documents. The trustee can hold it.

MR. EISENBERG: You're right.

THE COURT: And if you get an order, if you get federal district court, you get state court to order it, I think that's great. I don't know why you wouldn't get it from the producing entity, especially since you're producing the entity -- you're suing the producing entities. That could be decided there. But there's no magic to these documents. They're duplicative, from what I understand.

MR. EISENBERG: So Your Honor, if your guidance is that the trustee should hold these documents, that you're not going to render a decision from here, that the trustee can hold them, and if they're ordered to produce them in some other form, I'm fine with that, Your Honor.

The reality is that, you know, I asked the trustee to turn over what records he had because they belonged to Fresh Mix. They're Fresh Mix's legal files, so I asked for that.

This motion was spawned because originally, Pisanelli Bice threatened conversion. So I talked to the trustee and I said, I'll file the motion with Fresh Mix's records. I'll file a motion with this Court because, Your Honor, we consider that the bankruptcy court has jurisdiction over these records. But I'll file it to get that clarified.

So that's what triggered this whole process, is I asked the trustee for turnover, they then received a communication from Pisanelli Bice saying this is conversion. And if Your Honor's inclination is to say, look, let the district court remedy this issue, Your Honor, I'm fine with you saying, trustee, just hold the records. If somebody else decides to turn them over, that's fine. I'm fine with that result.

THE COURT: All right.

MR. EISENBERG: So what I'll just -- what I'll just say -- I'm sorry -- in conclusion, I would love to have the documents because in reality you already ordered that they are Fresh Mix's documents, and that's why they got turned over. So I'd like -- I thought it was appropriate that this Court is the court of appropriate jurisdiction because the trustee is holding them. That's why it was brought before you, Your Honor.

THE COURT: I ordered, with some reluctance -- no reluctance in the Court's ruling; reluctance to get to that

ruling, based upon the concerns of the previous process -- that the documents be turned over to the trustee. And I specifically held that they not be turned over to anyone else.

To be clear, it strikes the Court as concerning to allow that abuse of process to result in the goal of one of the forms of that abuse, which was to use the estate to litigate for the minority's interest, and through that vehicle, which admittedly was commenced by Get Fresh, to acquire documents in support of the minorities in what, you know, was supposed to be the estate's cause of action.

So this is not a clean case. It is not a, you know, simple "turn it over". There are other issues here. And there is ample evidence of availability of redress through more appropriate channels.

So take your point, but by now, the parties should understand that the Court has fairly strong feelings about this.

So I appreciate the argument. I'd like to hear from Mr. Greene.

MR. EISENBERG: Your Honor, if I may include one more point?

THE COURT: Sure.

MR. EISENBERG: So Your Honor, there's a balancing of, I'll say abuses, and so these records belong to Fresh Mix. So the Court, taking into -- I'll say these various abuses that

you're pointing to -- you dismissed the case. You dismissed the case for abuse of it being brought. Those records --

THE COURT: To be clear, the OST was for abuse of the filing and the continuation.

MR. EISENBERG: Correct, Your Honor. I'm sorry with that.

So with the abuses, you ordered the files turned over, and this is my -- you're the one who ordered it, but my recollection was so that the trustee, on behalf of the estate, could examine these other actions that were available to Fresh Mix. And these records were turned over and kept away from special counsel so that it did not influence the arbitration proceeding. And in fact, Your Honor, when it got resolved, I wasn't at the table with that resolution. That was something done by Get Fresh and the people in the arbitration. Fresh Mix was not a party to that resolution.

So it's --

THE COURT: Again, that bothers me. It compounds since it was administered to adjudicate Fresh Mix's claim within the arbitration in the state court action.

MR. EISENBERG: And I think you --

THE COURT: How could there be a settlement, how could there be a conclusion without Fresh Mix?

MR. EISENBERG: That's one of the interesting things, Your Honor. They carved out Fresh Mix's rights so that they

survived. And so you have these various competing issues that you're faced with. I agree. It's not clean.

So my role in the estate was to vindicate Fresh Mix's rights, post -- I'm here to vindicate Fresh Mix's rights. I understand how the Court feels. And it's with that in mind that what I don't want to see is the Court say, trustee, you can do whatever you want. Get rid of the records. Destroy the records -- because that's most likely what Pisanelli Bice and Bruce Leslie are going to ask for, that the trustee has to destroy these records -- when, Your Honor, it's two and a half years of fighting to get to them, and miraculously, Your Honor, whatever happened, everybody agreed to the dismissal. The other matter settled within days of the turnover of those records solely to the trustee and special counsel. Fresh Mix's records were turned over to the trustee and special counsel with the Court's purview.

You did not want these records to infect or sway the arbitration itself, Your Honor. I think the primary concern was the balance between Get Fresh, Lagudi, Ponder, Fresh Mix, all of those parties in the arbitration proceeding. Well, that's no longer a concern that this Court has, and the trustee does have physical -- a physical hard drive for the Pisanelli Bice documents, so it's a physical asset that's in their possession with regard to Fresh Mix's records that Pisanelli Bice have.

I will tell you, Your Honor, so Mr. Greene doesn't have to share, you know, on his own, Pisanelli Bice turned over Buckets 1 through 3 to me already. They're -- so their argument of not turning this stuff over, they've given me 1 through 3 before we got to this Court. You know, 1 through 3 was never the argument, Your Honor. It was always Bucket 4.

So there are these competing avenues, but the reality is, if the stuff belongs to Fresh Mix, Your Honor, disregard all the other noise behind and around. It belongs to Fresh Mix. And that's -- that should be the bankruptcy outcome. And it is a physical drive. They're records.

THE COURT: You're not recovering the drive to recover the drive.

MR. EISENBERG: No, but it was a crypto -- it was a crypto key, Your Honor. That's not physical. But the crypto key, if it had -- if it was the crypto key to open up a safety deposit box, Your Honor, I think you would say, okay, that's an asset, and don't return it to somebody who's not going to -- who's going to fight the owner to get it back.

So this struggle with the fact that it's an electronic duplicate, that shouldn't really change the Court's view of what the asset is. It is an asset belonging to Fresh Mix and not to these law firms.

And the fact the law firms kept telling Your Honor for two and a half years you can get it in the arbitration, you

can get it in state court, you can get it -- you're not going to -- don't give it to them, Your Honor. And now, here they are, they've been turned over, Fresh Mix's assets, and they're telling you once again, Your Honor, don't give it to Fresh Mix.

So if you're not inclined to do anything, Your Honor, which is, I guess, the sway, then the sway should be have the trustee hold it, we tell Pisanelli Bice -- explain it to Pisanelli Bice and Mr. Leslie, don't threaten the trustee with conversion charges. Get an order from a court of appropriate jurisdiction, which seems like the district court now, and wait for them to decide. Let it be decided there. I'm fine with that.

THE COURT: Mr. Greene?

MR. GREENE: Your Honor, I think the Court's comments are right on. In our view, as I indicated in our brief, I don't think the Court has jurisdiction. The case was dismissed. There was no reservation of rights.

THE COURT: The Court always has jurisdiction to enforce its own orders, and cleaning up the dismissal and what happens necessarily invokes that jurisdiction, doesn't it?

MR. GREENE: The Court does have -- I certainly don't disagree with that. The Court has jurisdiction to enforce its own orders. But enforcing the order means saying I did not reserve jurisdiction to deal with this issue. The parties --

THE COURT: Well, but even in a -- even in any

bankruptcy that concludes, liquidations in particular, or if there's a dismissal, something has to happen with the stuff. Now, whether it's the drive, whether it's the material on it, something has to happen with it. Right? And ordinarily, there's no dispute.

Here, despite the Court's ruling, there continues to be dispute as to whose stuff this is. Right? So --

MR. GREENE: Well, yeah. Let me address that and move on from the jurisdiction point because the one thing that Mr. Eisenberg just sort of ignores is the effect of 349(b)(2) which says that when a case is dismissed, absent an order --

THE COURT: I get it. You and Mr. Schwartz have made it point. I think you've made it --

MR. GREENE: Yeah.

THE COURT: -- fairly recent. But again, it doesn't negate the fact that Mr. Schwartzer and Mr. Imes need to do something with this. One party's saying this way, and the other party's saying that. In that instance, it seems pretty obvious -- especially since it really -- I'll hear Mr. Imes, but I don't think it's very onerous or burdensome to just hold it until, you know, somebody else with jurisdiction does decide where the stuff goes. And I don't know why it has to be this stuff because I'm assuming you have the same thing and that it's being preserved.

MR. GREENE: That is correct.

THE COURT: So again, I fear this is much ado about nothing other than both parties would like this copy back.

MR. GREENE: Your Honor, we are okay with the trustee keeping the disc, the hard drive, whatever it is --

THE COURT: Yeah.

MR. GREENE: -- in its (indiscernible) nature. We just don't think that it should be turned over to anyone else. We feel like the orders resolving the issue of ownership have been vacated, and so the ownership issues are still out there. And we agree entirely with your thoughts that the appropriate venue for that issue to be resolved and to resolve the issue of who should get these documents is the U.S. District Court, which Fresh Mix chose as its venue of choice going forward.

Fresh Mix was adamant about getting this bankruptcy case promptly dismissed, if you recall, back in December or early February -- or January or early February. And it was dismissed. And the effect of that dismissal is that those orders were vacated. And the issue about whether or not Pisanelli Bice owns this or Fresh Mix owns this, that, I think, is best resolved in the U.S. District Court. And I agree entirely with Your Honor on that point. We are not asking, at this point, to have this Court order the trustee to return the item, the disc, whatever it is, to Pisanelli Bice. Just not to disseminate it anywhere else until there is a court order from a court of competent jurisdiction.

So it sounds like, frankly, Mr. Eisenberg and we are on the same page in that respect. If he's happy with that, we're happy with that. The trustee just keeps it. The trustee ends up with assets at the end of a case all the time, and he can keep it and then it can be resolved through the discovery process in U.S. District Court.

Thank you, Your Honor.

THE COURT: Okay.

Ms. Galati?

MS. GALATI: Thank you, Your Honor. I appreciate your comments. It's very helpful. So I'm not going to duplicate that, and I'll be very quick. I'll just make some small points.

I agree with what Your Honor said. I agree with what Mr. Greene has said. It is the U.S. District Court that has jurisdiction over the Fresh Mix action, and that Court should determine what happens in discovery, including for the following reasons.

I recently looked at the docket for that case. I did not see that any party has filed a response to the amended complaint. And as a result, there's probably been no 26(f) -- Rule 26(f) conference. As such, no discovery can be done in that case until that conference occurs and until a plan is filed. And so that's an additional reason for this Court not to do anything about it. You've already identified a number of

reasons and facts for why -- I'll use my language -- under Bankruptcy Code 305 that this is not a proper bankruptcy purpose.

You've talked about the abuse of process, et cetera. I'm not going into that.

Mr. Eisenberg talked about the turnover to the trustee for the purpose of examining if there were other claims, but that's not what we're talking about here. Here, we're talking about Fresh Mix, not the trustee, pursuing other claims which also supports a denial of the motion.

And at the end of the day, it appears that Fresh Mix and its attorneys have substantial documents based on the detailed filing in the U.S. District Court. So many paragraphs, so many facts, so many exhibits. So they have what they need, and then they can proceed in the U.S. District Court with discovery, et cetera, and get whatever else they want to get.

So we are -- I think, again -- I think we're all on the same page. I'm not asking you to order the trustee to destroy anything. Just leave it as it is. Don't make a decision or don't grant Fresh Mix the relief that they're asking for.

THE COURT: Thank you.

MS. GALATI: Thank you.

THE COURT: Mr. Agelakopoulos?

MR. AGELAKOPOULOS: Good afternoon, Your Honor. Athanasios Agelakopoulos of Schwartz Law on behalf of Schwartz Law and Samuel A. Schwartz. I'll be brief, Your Honor, because I do not want to echo points that have already been made.

Just briefly, we join certain aspects of the presentation by Mr. Greene and Ms. Galati. We do not believe a motion is properly before you. We do not believe that adequate factual predicates have been established. And we do not believe that the requested relief by Fresh Mix should issue.

But I think the other points have been covered, and we reserve all rights with respect to how to proceed in the Federal District Court. But I just want to be very brief, Your Honor. I don't want to burden the record with too much here.

But at bottom, the relief that Fresh Mix is requesting should be denied for the reasons -- the thrust of the arguments that have been made by Pisanelli Bice and Ms. Galati. That relief should be denied.

THE COURT: Thank you very much.

Mr. Imes?

MR. IMES: Good afternoon, Your Honor. Jason Imes, holder of documents. No, electronic files.

To the extent that Pisanelli Bice and the other parties are now agreeable to the trustee and I holding on to these documents pending, you know, an order from another court or something like that, that -- you know, I think that probably

works for us and relieves a lot of our concerns.

The issue here is that on February 20th, I received an email from Mr. Greene that was copied to Mr. Eisenberg and Mr. Schwartz and Ms. Galati and Mr. Andersen. And it says, quote, "Those documents are the property of PB, and any retention or attempted use of them is conversion of PB's property," unquote. So that's the kind of sentence that obviously, you know, lands fairly -- with a fairly significant amount of force and that we can't ignore.

Now, we told the parties that we really don't have a position one way or the other and that if they get an order saying what we're to do with them, we're happy to comply with that and happy to hold them in the meantime. They're electronic files. They'd be easy enough for me to turn over to someone or to destroy or whatever whichever court decides. But you know, I'm certainly willing to hold them in the meantime, and I assume that Mr. Schwartzer is, as well.

So I don't know if that helps or informs or provides any additional insight, Your Honor.

THE COURT: The insight is that it doesn't appear to be disputed or disagreed with terribly, so I think that's the takeaway.

MR. IMES: Yeah.

THE COURT: All right. Any other party that I have not called that would like to make a comment before I circle

back around?

All right. Mr. Eisenberg, we're back to you, then.

MR. EISENBERG: Thank you, Your Honor. Well, some of the comments seem to presuppose that the bankruptcy has no purpose, and I know, Your Honor, that's a dismissal itself. I get that.

But the points that, hey, there's this other proceeding out there, I think that's a red herring. And it may not change the result, Your Honor, but I think it's important for this Court to understand. The fact that there's another action out there --

THE COURT: It really doesn't, Mr. Eisenberg, because again, in litigation, you get stuff. Right?

MR. EISENBERG: Mm-hmm.

THE COURT: This ultimately was a litigation. And the trustee, through my orders, got stuff.

Now, ordinarily, on the production, you know, parties don't come back and say I want -- there are instances, I get it, where the confidentiality is such that they want that returned or certified as destroyed or such.

That's not this situation. Fresh Mix wants documents -- again, akin to discovery -- to be able to use in litigation, and there is a ready-made avenue to get those, especially if they are your documents and the other co-owner, as you view it, does not object and waives any interest as a

part of that.

So I don't see -- I don't see the issue with the trustee holding it. It is not -- it is not -- the parties want that. They want it to exclude or to preclude the other. And that's the problem here.

MR. EISENBERG: Your Honor, I understand that fully, and I think that's sort of where I was going, Your Honor, that people are arguing that there's other avenues, other vehicles, Your Honor.

The decision in this court was about ownership. I'm not saying issue a turnover, Your Honor, because I don't think that's what you're going to do. But the issue was who owns this stuff, and I think that's squarely -- the Court had ruled --

THE COURT: It's adjudicated.

MR. EISENBERG: Yeah, so -- but as to discovery, Your Honor, it's not --

THE COURT: Yeah. Yeah, it kind of ends that discussion, though.

MR. EISENBERG: Well --

THE COURT: That order has no force and effect because of the dismissal.

MR. EISENBERG: Well, Your Honor, it's about ownership, right? And I just -- the other parties keep saying this is a discovery issue. It's about ownership, as the Court

had examined this previously.

I understand it's going to go to another Court, Your Honor, and I appreciate that the parties have now changed their position that they're no longer fighting the retention and the holding by the trustee. And that -- like I said, Your Honor, that's what sparked this issue in front of you. It was not my inclination to come back to you, but when the trustee got threatened, somebody has to do something. The trustee is a neutral. I stepped up and I filed the motion.

So that was the purpose of this motion, Your Honor. And again, we've been litigating in this forum, other forums about who owns what. That decision has been made multiple times, and it'll be made again in the District Court and we'll take it there.

So with that, I just think some of their arguments are missing the target, but I understand what the Court wants here. And I'm fine. Now that there's no threat of these documents being destroyed or threats to the trustee, I'm fine with an order just status quo. And I don't know what the Court wants to do about -- you know, I think Mr. Greene has dropped that, I'll say, conversion issue, and Ms. Galati, who had joined that issue, is now dropping that as well. So now we have a status quo that can be maintained.

As to Ms. Galati saying I can't ask for those records prior to a discovery plan, under --

THE COURT: Not -- not -- not -- not for me. Not mine.

MR. EISENBERG: Okay. Then I will punt that, Your Honor. If that's not a focus of yours, it's not a focus of mine. I'll punt that issue down the road.

So with that, I don't know if you want me to submit an order saying maintain the status quo or let the other parties --

THE COURT: The Court will get out its own order on this.

MR. EISENBERG: Okay.

THE COURT: No need -- the past has suggested that it'll be much more efficient if the Court definitely --

MR. EISENBERG: Yeah.

THE COURT: -- says trustee shall retain, pending further court order of this or any other court of competent jurisdiction.

MR. EISENBERG: Appreciate it, Your Honor.

THE COURT: And that's what the Court intends to do.

Mr. Greene, I see that you, you know, flipped the video back on. So another comment?

MR. GREENE: Yes, just a comment in regard to some of Mr. Imes' comments. We initially demanded that the return of the documents in the format we had provided them, and we did indicate that transferring them to another party would, in our

view, be a conversion. And I did phrase it the way Mr. Imes said. But at the same time, we have never filed anything. We have never made a further demand. We have never filed anything asking the Court to cause the documents to be returned to us or for them to be destroyed.

The sole issue was opposing the relief sought in this motion, and it sounds like the Court is going to deny this motion, and I understand what the Court just said. It would be the nature of your order, and we're fine with that. And the trustee can rest easy that we're not going to be asserting any conversion claims against the trustee.

So I just wanted to clarify that and make sure the Court understood and the trustee and Mr. Imes understood where we are on those issues at this point. So that's all I had to add.

THE COURT: All right, thank you.

MR. GREENE: You're welcome.

THE COURT: Unless any other party -- Mr. Agelakopoulos, did you have something to add?

MR. AGELAKOPOULOS: Really -- really briefly, Your Honor. Just as long as the Court's order -- I just want to make sure that I understand the Court's order is making clear that this motion is denied subject to the terms of your order. It's all -- that was my language.

THE COURT: Yeah, whether it's denied, granted in

part, denied in part, the substance is that the trustee will hold it pending an appropriate order.

So -- Ms. Galati?

MR. AGELAKOPOULOS: Thank you, Your Honor.

MS. GALATI: Can I just say I disagree with Mr. Eisenberg's representations about the change in position, but thank you, Your Honor. Appreciate it.

THE COURT: Certainly.

So the Court will adopt its statements and get out its own order asking, requiring the trustee to simply hold the electronic documents as received subject to an appropriate for this Court or the District Court or any other court with competent jurisdiction over the documents.

That'll conclude the motion by Fresh Mix.

We also have Ms. Galati's motion to withdraw from the case which has been dismissed, but we can't quite quit.

Mr. Eisenberg, I note that you had a limited opposition, but in light of all this, is there really any opposition to Ms. Galati's withdrawal?

MR. EISENBERG: No, Your Honor. So no, status quo is fine and no opposition at this point.

THE COURT: All right. So Ms. Galati --

MS. GALATI: Thank you, Your -- thank you, Your Honor, and thank you, Mr. Eisenberg.

THE COURT: All right. Court will approve and grant

the relief for the termination of representation of Ms. Galati.

Ms. Galati, if you would lodge the appropriate order.

Mr. Eisenberg, do you want to see it? Or do you waive signature?

MR. EISENBERG: No, Your Honor, I waive signature. I trust Ms. Galati.

THE COURT: All right. So you don't need to submit. Just go ahead and upload that for the Court's review, please.

MS. GALATI: Thank you, everyone.

THE COURT: Thank you. With that, unless there's anything else we need to address, then that will conclude the hearings in Fresh Mix.

Thank you very much. Appreciate your patience while we addressed the technological issue. Glad we could get them resolved. That'll conclude the hearing. We'll be adjourned.

IN UNISON: Thank you, Your Honor.

(Proceedings concluded at 2:39 p.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Dena Farbman, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.



______________________________

DENA FARBMAN, AAERT NO. 629 DATE: 4/10/2024

ACCESS TRANSCRIPTS, LLC