Steven K. Eisenberg, Esquire (Pro Hac Vice)
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pennsylvania 18976
Telephone: (215) 572-8111
Facsimile: (215) 572-5539
E-Mail: seisenberg@sterneisenberg.com
*Counsel for Fresh Mix, LLC*

Stern & Eisenberg ATTORNEYS AT LAW

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>FRESH MIX LLC,<br><br>Debtor(s). | Case No. BK-S-20-12051-GS<br><br>Chapter 7<br><br>**MOTION TO REOPEN**<br><br>Hearing Date: September 18, 2026<br>Hearing Time: 9:30 AM |

Following the decisions rendered in both the Federal District Court of Nevada, case number 2:24-cv-00397 and of the Ninth Circuit Court of Appeals, case number 25-2462, Fresh Mix, LLC ("Fresh Mix"), by and through counsel, Steven K. Eisenberg, Esquire of Stern & Eisenberg, PC, moves for entry of an Order reopening the above-captioned bankruptcy case pursuant to 11 U.S.C. §350 for the limited purpose of adjudicating motions seeking sanctions, disgorgement of fees, accounting relief, and other remedies arising from conduct that occurred before and during this bankruptcy proceeding under 11 U.S.C. §105, 11 U.S.C. §303(i), 28 U.S.C. §1927, F.R.B.P. 9011 and other applicable statutes.

Stern&Eisenberg ATTORNEYS AT LAW

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 as the requested relief concerns conduct occurring before and during a bankruptcy proceeding previously administered by this Court and involves matters arising in and related to a case under title 11. This Court retains jurisdiction to determine whether a closed case should be reopened pursuant to 11 U.S.C. § 350(b). Pursuant to the decision of the District Court, the "*bankruptcy court is the appropriate forum in which to pursue the requested sanctions.*"

## II. CASE BACKGROUND

As a threshold matter, the Bankruptcy Court is being asked to reopen its own case to address misconduct – that the Bankruptcy Court itself identified - occurring before and during the bankruptcy proceeding, conduct that directly affected the administration and integrity of this Court's proceedings.

While the Court is familiar with the extensive background concerning Fresh Mix, as well as the facts leading up to the Court's Dismissal of the Involuntary Bankruptcy as a bad-faith filing, Fresh Mix provides this background.[1] The involuntary bankruptcy was dismissed pursuant to an Order to Show Cause (ECF No. 1118) leading to the dismissal order at ECF No. 1170. At a hearing on April 4, 2024, this Court deferred any decisions concerning sanctions to the District Court since that litigation was already underway. Notwithstanding, the District Court directed that the claims under 11 U.S.C. §105, 11 U.S.C. §303(i), 28 U.S.C. §1927, F.R.B.P. 9011 and

[1] For reference purposes, Fresh Mix believes numerous filings and decisions within the bankruptcy concerning various counsel may be of assistance. The motion to compel Pisanelli Bice may be found at ECF Nos. 263-264 as well as in adversary 22-01049, AECF Nos. 1 with the hearing on summary judgment and decision at AECF Nos. 158, 173, respectively. The motion to compel CDQ is at ECF Nos. 473-474; and the motion to compel Leslie is at ECF No. 524. The hearing and decision concerning CDQ and Leslie are located at ECF Nos. 661 and 1057, respectively.

other applicable statutes are appropriately before this Court[2]. Following the recent decision in the Ninth Circuit[3], Fresh Mix believes that matter is ripe for this Court and proceeds with this motion.

Fresh Mix LLC ("Fresh Mix") was formed as a Nevada limited liability company engaged in produce processing and food distribution. At all times relevant to these proceedings, Get Fresh Sales, Inc. ("GFSI") held a sixty-percent ownership interest in Fresh Mix, while Paul Lagudi and William Todd Ponder collectively owned the remaining interest. Lagudi and Ponder served as officers and managers of Fresh Mix, while GFSI's principals, including Scott Goldberg, Dominic Caldara, and John Wise (collectively, the "GFS Managers"), exercised control over GFSI and also served as managers of Fresh Mix. Pursuant to Fresh Mix's operating agreement, significant corporate actions, including the commencement of bankruptcy proceedings, required supermajority approval and could not be undertaken unilaterally by GFSI or the GFS Managers.

Beginning in approximately 2017, disputes arose among the owners and managers concerning the operation, valuation, management, and future ownership of Fresh Mix. Those disagreements intensified as GFSI explored the potential sale of affiliated businesses and disputes emerged concerning the allocation of revenues, liabilities, business opportunities, and the overall value of Fresh Mix. As the parties' interests increasingly diverged, the

[2] A copy of the District Court decision is attached as **Exhibit "A"**.
[3] A copy of the Ninth Circuit decision is attached as **Exhibit "B"**.

Stern&Eisenberg ATTORNEYS AT LAW

disagreements evolved into extensive litigation, arbitration proceedings, and ultimately bankruptcy litigation.

During this period, a series of law firms represented Fresh Mix, GFSI, and the GFS Managers. In March 2018, Cohen Dowd Quigley PC was retained and, as found by this Court and described by the United States Court of Appeals for the Ninth Circuit, represented both Fresh Mix and GFSI. In April 2018, Bruce A. Leslie and Bruce A. Leslie, Chtd. were retained to represent GFSI and the GFSI Managers and thereafter also undertook representation of Fresh Mix. In November 2018, Pisanelli Bice, PLLC likewise represented both Fresh Mix and GFSI. By late 2018, substantial disputes already existed among Fresh Mix's owners and managers concerning corporate control, management authority, access to records, ownership rights, valuation issues, and alleged misconduct involving company affairs. Despite those disputes and the increasingly adverse positions being asserted among the parties, counsel continued to represent both Fresh Mix and GFSI simultaneously.

In November 2018, GFSI exercised its limited authority concerning Fresh Mix by removing Lagudi and Ponder from their officer positions, but not as owners, members and managers of Fresh Mix and improperly restricted their access to company information and records. Litigation commenced in in Nevada State Court and in an arbitration proceeding. Litigation and arbitration continued throughout 2019, during which Lagudi and Ponder asserted derivative claims on behalf of Fresh Mix against GFSI and the GFS Managers. Notwithstanding the clear conflict of interests amongst GFSI, Fresh Mix and the GFSI Managers Those derivative claims placed the interests of Fresh Mix directly at odds with the interests of GFSI and its principals, yet the simultaneous representation continued.



Stern&Eisenberg ATTORNEYS AT LAW

As the disputes escalated, counsel began considering strategies involving the placement of Fresh Mix into bankruptcy. In December 2019, Brownstein Hyatt Farber Schreck LLP ("BHFS") through its employee/partner, Samuel A. Schwartz was retained to jointly represent GFSI and Fresh Mix. 9th Circuit Decision, page 6. Schwartz departed BHFS continuing his representation of both entities. 9th Circuit Decision, page 6.

The Ninth Circuit's recitation describes the coordinated conduct undertaken by the various attorneys who tactically attempted to dismantle their own client in furtherance of the involuntary bankruptcy scheme and in favor of their other client, GFSI. Even Fresh Mix's own bankruptcy counsel, Attorney Larson, did nothing to protect his client, rather he took his lead from Schwartz and GFSI, his adversaries. See Ninth Circuit Decision, page 7. The same attorneys hired to protect Fresh Mix, took funds from Fresh Mix to pay their legal bills while working to harm Fresh Mix. Id. Fresh Mix funds were used to satisfy legal expenses incurred for the benefit of GFSI and related parties in furtherance of the plot to make Fresh Mix appear insolvent immediately before commencement of the bankruptcy proceeding. Id. Any funds paid to Fresh Mix's conflicted counsel, whether claimed to be paid by GFSI or Fresh Mix, constitutes unjust enrichment that should be stripped from them for their misconduct.

On April 21, 2020, Schwartz prepared the involuntary petition based on knowingly false facts. On April 22, 2020, Schwartz had the petition signed by Scott Goldberg, then CFO of Fresh Mix and GFSI. Schwartz knowing that the petition was false, had Goldberg sign it. On the morning of April 23, 2020, Fresh Mix was plundered by the GFSI managers at the direction of Schwartz and $2.3 million in cash was transferred out. Later that afternoon

Schwartz filed the involuntary Chapter 7 petition against Fresh Mix, commencing Case No. 20-12051-GS. The Ninth Circuit noted that Schwartz filed the involuntary petition on behalf of GFSI despite his prior and ongoing representation of Fresh Mix. Id. page 6-7.

The misconduct of the attorneys became evident during the unraveling of the involuntary bankruptcy. As attorneys and GFSI were forced to surrender once hidden evidence of their misconduct. Pisanelli Bice, Cohen Dowd and Bruce Leslie, with the assistance of BHFS and Schwartz knowingly planned against their own client, Fresh Mix. See email from 2019 attached as **Exhibit "C"**, page 1.

BHFS's managing partner claimed no involvement with the deceit, hiding the truth that BHFS worked with Fresh Mix's other lawyers toward a bad-faith bankruptcy. See **Exhibit "D"** communication from BHFS's managing partner. BHFS and Schwartz had prepared and sent a fee agreement to Pisanelli Bice on December 6, 2019 that was, "*…broad enough to cover whatever we elect to do…*". See **Exhibit "E"**, page 2. It was ultimately signed and returned to BHFS. See January 17, 2020 email from Scott Goldberg to BHFS at **Exhibit "F"**. In 2022 BHFS told this Court that this agreement did not exist and, "*GFSI did not even retain Mr. Schwartz until **after** he had already left Brownstein in February 2020*". See July 1, 2022 BHFS Opposition to Subpoena at ECF No. 653, page 2. BHFS's general counsel's declaration as to the existence of the 2019 BHFS engagement agreement is less than candid. See ECF No. 653-4. Schwartz's declaration made for BHFS is less than candid, ignoring the existence of the relationship. See ECF No. 653-2. BHFS's responses to the subpoena demonstrates that they knew the truth and kept it hidden.

Stern&Eisenberg ATTORNEYS AT LAW

During the bankruptcy proceeding, disputes arose concerning attorney conduct, privilege issues, legal files, and the interests advanced by counsel before and during the case. The Chapter 7 Trustee sought access to files maintained by attorneys who had represented Fresh Mix, including files held by Cohen Dowd Quigley PC, Bruce A. Leslie, BHFS, Schwartz, and others. Knowing the Trustee, acting on behalf of the Estate of Fresh Mix, was examining the firms' conduct, all of the firms vigorously resisted surrendering Fresh Mix's legal records to the Trustee. Even after the Bankruptcy Court ordered turnover of legal files, the Firms did not comply with the orders.

As the case progressed, the Court expressed increasing concern regarding the propriety of the involuntary petition. On November 16, 2023, the Court entered an Order to Show Cause why the case should not be dismissed as a bad-faith filing, having been employed as a litigation tactic rather than for a legitimate bankruptcy purpose. ECF No. 1118.

Following issuance of the Order to Show Cause and certain decisions in the arbitration proceeding, still during the pendency of the bankruptcy, GFSI resolved its litigation with Lagudi and Ponder in November 2023. As part of that resolution (and in accordance with the operating agreement), GFSI surrendered any interest in Fresh Mix leaving Lagudi and Ponder as the only remaining owners of Fresh Mix. Although Fresh Mix's assets, including claims against the attorneys were still under the control of the Chapter 7 Trustee, as part of the resolution GFSI confirmed that it had done nothing to effect Fresh Mix's legal rights and ability to pursue claims and remedies belonging to Fresh Mix. GFSI and the GFSI Managers also confirmed the joint-representation of the various attorneys and

acknowledged Fresh Mix's rights to its legal records by waiving its frivolous claim of attorney-client privilege involving those former counsel (or counsel who had participated in the bad-faith, fraudulent conduct). As the Court acknowledged, the principal asset of Fresh Mix was now the claims against the counsel. See ECF no. 1165, page 38-39.

On January 22, 2024, this Court dismissed the involuntary bankruptcy case, expressly determining that the petition had been filed in bad faith and constituted an abuse of the bankruptcy process. No appeal was taken from that ruling, and the Court's findings remain in full force and effect. The case was subsequently closed.

Following dismissal of the bankruptcy proceeding, Fresh Mix commenced litigation against various attorneys and law firms involved in the events leading to the involuntary filing. Among other allegations, Fresh Mix asserted that counsel simultaneously represented Fresh Mix and GFSI despite materially adverse interests and participated in conduct that harmed Fresh Mix and culminated in the involuntary bankruptcy filing. On April 4, 2024, it appeared that the Bankruptcy Court directed Fresh Mix to proceed with seeking remedies in the already filed litigation against the firms before the Federal District Court. See ECF No. 1255. Fresh Mix did so. On March 31, 2025, the United States District Court for the District of Nevada ruled that sanctions-related claims arising from the involuntary bankruptcy proceeding belonged in the Bankruptcy Court and should be presented there. See Exhibit A. Fresh Mix appealed that decision on certain grounds.

The matter subsequently proceeded to the Ninth Circuit. In a published order certifying questions of Nevada law to the Nevada Supreme Court, the Ninth Circuit set forth a detailed factual history of the underlying dispute providing significant clarity. The Ninth

Stern&Eisenberg ATTORNEYS AT LAW

Circuit expressly described Samuel A. Schwartz and BHFS as representing both Fresh Mix and GFSI before the involuntary bankruptcy filing and continuing that representation after forming Schwartz Law PLLC. The Ninth Circuit likewise described the simultaneous representation of Fresh Mix and GFSI by multiple firms during the period leading to the involuntary petition, together with the events surrounding the use of Fresh Mix funds, pre-petition distributions, and the filing of the involuntary bankruptcy petition itself. The Ninth Circuit reiterated the troubling facts concerning the conduct of the various attorneys in harming their client, Fresh Mix.

The Ninth Circuit's published factual recitation materially clarifies and confirms issues central to the conduct that preceded the involuntary bankruptcy filing, including the existence of simultaneous representation of Fresh Mix and GFSI by counsel involved in the events leading to the petition. Those developments occurred after this case closed and bear directly upon Fresh Mix's request for sanctions, disgorgement, and related relief arising from conduct that culminated in an involuntary bankruptcy that this Court has already determined was filed in bad faith and constituted an abuse of the bankruptcy process. It is appropriate that the Court now consider appropriate sanctions against these firms for their actions in harming their client.

The proposed Motion for Sanctions is attached as **Exhibit "G"**.

## III. MEMORANDUM OF LAW

Section 350(b) of the Bankruptcy Code provides that a bankruptcy case may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Federal Rule of Bankruptcy Procedure 5010 authorizes a debtor or other party in

interest to seek such relief. Whether a case should be reopened rests within the sound discretion of the bankruptcy court. *In re Staffer*, 306 F.3d 967, 972 (9th Cir. 2002); *In re Menk*, 241 B.R. 896, 913-14 (B.A.P. 9th Cir. 1999). The District Court has directly ruled that the imposition of sanctions under certain statutes belongs squarely before this Court.

Fresh Mix seeks reopening for the limited purpose of permitting this Court to adjudicate motions for sanctions, disgorgement, accounting relief, and production of fee records under 11 U.S.C. §105, 11 U.S.C. §303(i), 28 U.S.C. §1927, F.R.B.P. 9011 (etc…) concerning their conduct leading up to and during a bankruptcy proceeding that this Court ultimately determined was filed in bad faith and constituted an abuse of the bankruptcy process. Reopening is therefore warranted both to accord relief to the debtor and for "other cause" within the meaning of § 350(b).

***A. Cause Exists to Reopen the Bankruptcy Case Under 11 U.S.C. § 350(b)***

The Bankruptcy Code does not narrowly define the phrase "other cause." Courts have consistently recognized that § 350(b) should be applied flexibly to permit bankruptcy courts to address matters affecting the administration and integrity of bankruptcy proceedings. See *In re Menk*, 241 B.R. at 913-17; *In re Staffer*, 306 F.3d at 972.

The relief Fresh Mix seeks arises directly from this Court's prior administration of the involuntary bankruptcy case. The District Court ruled that the claims under 11 U.S.C. §303(i), 28 U.S.C. §1927, F.R.B.P. 9011 are appropriately brought to the Bankruptcy Court. This Court entered an Order to Show Cause expressing concern that the bankruptcy had been commenced by an insider for the purpose of disadvantaging minority owners and obtaining leverage in related litigation. Following further proceedings, this Court dismissed



Stern&Eisenberg ATTORNEYS AT LAW

the involuntary case and determined that the filing was made in bad faith and constituted an abuse of the bankruptcy process. Those findings remain final and unappealed.

The motions Fresh Mix seeks to file concern attorney conduct that allegedly contributed to and culminated in that abusive filing. The requested relief therefore concerns matters that strike at the core of the Court's authority to regulate proceedings before it and to protect the integrity of the bankruptcy system. Such circumstances constitute ample cause for reopening under § 350(b). The firms involved in the bad-faith action should be sanctioned for and not benefit from their misconduct.

***B. The District Court Has Already Determined That the Bankruptcy Court Is the Proper Forum***

The need for reopening is further reinforced by the United States District Court's March 31, 2025 Order. In that decision, the District Court concluded that sanctions arising from the involuntary bankruptcy proceeding under certain statutes must be presented to the Bankruptcy Court.

In reaching that conclusion, the District Court relied upon *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 707 (9th Cir. 2004), 11 U.S.C. § 303(i), and *Raymark Indus., Inc. v. Baron*, No. CIV. 96-7625, 1997 WL 359333, at *6 (E.D. Pa. June 23, 1997). The District Court therefore expressly identified this Court as the proper tribunal to consider sanctions and related relief arising from the involuntary bankruptcy proceeding under certain statutes.

The significance of that ruling cannot be overstated. Fresh Mix is not attempting to forum shop or seek duplicative proceedings. Rather, Fresh Mix is complying with the District Court's directive concerning its rights to relief under certain statutes. Reopening is necessary

to permit the issues identified by the District Court to be heard in the forum designated by the District Court itself.

Denying reopening would place Fresh Mix in an untenable position. The District Court has already ruled that sanctions relief under certain statutes belongs in Bankruptcy Court. If this Court declined to reopen the case, Fresh Mix would effectively be deprived of any forum in which to pursue this statutory relief the District Court has determined must be presented here. Section 350(b) exists precisely to avoid such inequitable results.

### ***C. The Factors Identified in In re Judson Overwhelmingly Favor Reopening***

Courts within the Ninth Circuit frequently evaluate motions to reopen by considering the factors identified in *In re Judson*, 586 B.R. 771, 779-80 (Bankr. C.D. Cal. 2018). Those factors include: (1) the length of time the case has been closed; (2) whether a non-bankruptcy forum has jurisdiction to determine the issue; (3) whether prior litigation has determined the appropriate forum; (4) whether any party would benefit from reopening; and (5) whether reopening would be futile. Each factor favors reopening here.

First, the case has not been closed for an extended period. The dismissal order was entered on January 22, 2024. In April 2024, the defendants argued, not that the matter did not require resolution, but that the District Court was the appropriate forum for resolving all matters, the Bankruptcy Court was apparently persuaded by that position – but defendants, transparently acting out of their self-interest, were once again wrong. During the intervening period, litigation concerning the events underlying the bankruptcy has remained active in federal court and on appeal. The relatively brief passage of time weighs in favor of reopening.

Stern&Eisenberg ATTORNEYS AT LAW

Second, the issues Fresh Mix seeks to present arise directly from conduct occurring leading up to and during this bankruptcy case. The requested relief concerns the filing, prosecution, and administration of an involuntary bankruptcy petition filed in this Court and ultimately dismissed by this Court as a bad-faith filing. The Bankruptcy Court is uniquely situated to evaluate that conduct.

Third, the District Court has already determined that sanctions arising from the involuntary bankruptcy proceeding under certain statutes belong in Bankruptcy Court. This factor strongly favors reopening because another federal court has expressly identified this Court as the appropriate forum. Otherwise, and even though both the District Court and Bankruptcy Court acknowledge the possibility of sanctions, Fresh Mix is left in an inconceivable position in purgatory - with no actual ability to exercise its rights and seek redress *in any court* for defendants' conduct. Fourth, reopening may provide substantial benefit to Fresh Mix and other interested parties. Fresh Mix seeks disgorgement of fees, accounting relief, restitution, and sanctions arising from conduct that harmed Fresh Mix, including the abuse of the bankruptcy process. Moreover, reopening serves the institutional interests of the Bankruptcy Court by permitting review of conduct affecting proceedings before it.

Finally, reopening would not be futile. The requested sanctions, disgorgement, accounting, and related relief have never been fully adjudicated and it is rather clear from the facts that relief under 11 U.S.C. §105, 11 U.S.C. §303(i), 28 U.S.C. §1927, F.R.B.P. 9011 and other applicable statutes is more than warranted. Although §303(i) claims ordinarily arise upon dismissal of an involuntary petition, the Bankruptcy Court previously deferred

consideration of sanctions-related issues because related litigation was pending. The subsequent dismissal of the District Court action and Ninth Circuit certification have resolved the jurisdictional uncertainty that previously prevented this Court from addressing those remedies. Moreover, and not to put to fine a point on it, the District Court expressly declined to decide those issues and instead directed that they be presented back to the Bankruptcy Court. Meaningful relief therefore remains available. Accordingly, each of the *Judson* factors weighs decisively in favor of reopening.

### ***D. Reopening Serves Judicial Economy and Protects the Integrity of the Bankruptcy Process***

Reopening this case will also promote judicial economy. This Court presided over the involuntary bankruptcy from its inception through dismissal. The Court is already familiar with the parties, the underlying disputes, the Order to Show Cause, the trustee proceedings, and the findings that ultimately resulted in dismissal of the involuntary petition as a bad-faith filing. These firms have made statements and taken positions before this Court demonstrating not only their contempt for their obligations and duties to their client, Fresh Mix, but also a contempt for the Court demonstrated by their conduct and representations to this Court.

No other tribunal possesses the same familiarity with the underlying bankruptcy record. Requiring another court to revisit those issues would result in unnecessary duplication of effort and create a risk of inconsistent rulings.

Most importantly, reopening serves the Bankruptcy Court's fundamental responsibility to protect the integrity of the bankruptcy process. The Court has already



Stern&Eisenberg ATTORNEYS AT LAW

Stern&Eisenberg ATTORNEYS AT LAW

determined that the involuntary petition constituted an abuse of that process. Fresh Mix now seeks to present evidence concerning the conduct that contributed to that result, including conduct described in the Ninth Circuit's published Order Certifying Questions to the Nevada Supreme Court. The Ninth Circuit expressly described Samuel Schwartz as representing both Fresh Mix and GFSI during the period leading to the involuntary filing, and further described conduct involving the use of Fresh Mix funds to reimburse GFSI's legal fees, that conflicted counsel appears to have advised GFSI to effectuate distributions to deplete Fresh Mix, and even that counsel for the debtor in bankruptcy, Larson, appears to have been retained as a mere figurehead and tool of GFSI who failed to protect Fresh Mix's interests, while of course recognizing the bad faith of the filing of the involuntary petition itself.

Whether that conduct warrants sanctions, disgorgement, accounting relief, or other remedies is a matter that should be determined by the court whose process was allegedly abused. Reopening the case permits the Court to fulfill that responsibility.

[Rest of Page Intentionally Left Blank]

**VI. CONCLUSION**

Regardless of ownership disputes concerning malpractice claims, this Court possesses independent authority to address misconduct affecting its proceedings and the administration of the bankruptcy estate. For the foregoing reasons, Fresh Mix respectfully requests that the Court enter an order reopening this bankruptcy case pursuant to 11 U.S.C. §350(b) and Federal Rule of Bankruptcy Procedure 5010 and allow Fresh Mix to file its motion(s) seeking sanctions, disgorgement, accounting relief, production of fee records, and such other relief as the Court deems appropriate, together with such additional relief as may be just and proper.

Dated: 7/28/2026

/s/Steven K. Eisenberg, Esq
Steven K. Eisenberg, Esq.
*Admitted Pro Hac Vice*
Stern & Eisenberg PC
1581 Main Street, Suite 200
Warrington, PA 18976

Stern & Eisenberg ATTORNEYS AT LAW

CERTIFICATE OF SERVICE

I certify that on the 28th day of July, 2026, I caused to be served a true and correct copy of the foregoing Motion to Reopen and Notice of Motion to Reopen through electronic service under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, through Notice of Electronic Filing automatically generated by the Court's facilities upon all of those parties who have entered their appearance or otherwise requested notice of filings made in the above captioned bankruptcy proceeding to receive service through electronic means.

/s/ Steven K. Eisenberg, Esquire
Steven K. Eisenberg
Counsel for Fresh Mix, LLC